933 A.2d 638

KOFI RIES, APPELLANT v. DEPARTMENT
OF CORRECTIONS, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted October 1, 2007—Decided October 18, 2007.

Before Judges LINTNER, GRAVES and SABATINO.

*Kofi Ries,* appellant pro se.

*Anne Milgram,* Attorney General, attorney for respondent (*Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Sean M. Gorman,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SABATINO, J.A.D.

Kofi Ries, a State prisoner, appeals from a July 3, 2006 final agency decision of the Department of Corrections imposing disciplinary sanctions upon him for committing prohibited act *.204 ("use of any prohibited substances such as drugs, intoxicants or related paraphernalia not prescribed for the inmate by the medical or dental staff"). *N.J.A.C.* 10A:4–4.1. We affirm.

The facts, as reflected in the administrative record, are simple and essentially uncontroverted. Ries admits that he escaped from a halfway house known as Hope Hall on May 9, 2006. Several weeks later, on June 23, 2006, Ries was apprehended and taken to Riverfront State Prison. Upon his arrival at Riverfront, and as part of the routine protocol when an inmate is returned to a facility, Ries was ordered to provide a urine specimen to be tested for prohibited substances.

Ries's sample tested positive for cocaine and opiates. After the test results came back, Ries was charged with violating *.204 of the Department's disciplinary regulations, as codified at *N.J.A.C.* 10A:4–4.1. Ries appeared at the hearing with a counsel substitute. His defense was that he felt pressured to use drugs while he was on the run, and that he had not used drugs while confined within the prison walls. Ries called no witnesses, and did not

contest the chain of custody or the accuracy of his positive drug test.

The hearing officer found Ries guilty of the drug violation, relying upon the Department's unrefuted proofs. The hearing officer rejected Ries's claim that he was outside of the authority of prison officials while he was on escape status. The hearing officer recommended sanctions of ten days detention, 185 days of lost commutation time, 185 days of administrative segregation, 365 days of urine monitoring, and the permanent loss of contact visits. After Ries filed an internal appeal, a Department Administrator upheld the guilty finding in a July 3, 2006 final agency decision. However, the Administrator modified the punishment, suspending the detention sanction for thirty days and the administrative segregation for sixty days.

Ries argues on appeal that the Department exceeded the scope of its authority by disciplining him for drug use that occurred while he was on escape status. He also contends that there was insufficient evidence to support the finding of his guilt, and that the elimination of his contact visit privileges was too severe a sanction. None of these arguments have merit.

Ries's jurisdictional claim overlooks the fact that during the time that he was unconfined, following his escape from the halfway house, he still remained subject to the legal custody and authority of the Commissioner of Corrections. *See N.J.S.A.* 30:1B-6 (reciting the powers and duties of the Commissioner). The Department of Corrections is entrusted with the legal authority, among other things, "to provide for the custody, care, discipline, training and treatment of adult offenders committed to State correctional institutions or on parole[.]" *N.J.S.A.* 30:1B-3. To carry out those responsibilities, the Commissioner is empowered to adopt rules and regulations. *N.J.S.A.* 30:1B-24. Those regulations include the disciplinary provisions, and various enumerated infractions, set forth in *N.J.A.C.* 10A:4-4.1.

Unquestionably, Ries continued to be an "adult offender [ ] committed to State correctional institutions" after he escaped from the halfway house. *N.J.S.A.* 30:1B–3. His temporary, self-initiated departure from the Department's physical custody did not divest it of legal custody over him. Indeed, the Commissioner's authority extends to convicted offenders who are physically outside the walls of a prison, such as parolees, inmates on work release programs, and inmates who are granted special permission to receive outside medical care, visit dying relatives, attend funerals, or meet with prospective employers. *See, e.g., N.J.S.A.* 30:1B–3 (including persons "on parole" as within the Department's jurisdiction); *N.J.S.A.* 30:4–91.3 (authorizing the Commissioner to extend the limits of the place of confinement for a variety of "compelling reason[s] consistent with the public interest"). Otherwise, public safety would be endangered if the Commissioner could not assert legal authority over a prisoner who escaped, a parolee who had not accounted for his or her whereabouts, or an inmate on work release or out of confinement for some other approved purpose.

Further, the Commissioner has a valid interest in assuring that offenders who are committed to his care and custody do not ingest controlled dangerous substances, whether they do so inside or outside the confines of a penal facility. Such illegal drug activity not only can pose dangers to the public, but it also can interfere with the penological objectives of treatment and rehabilitation that are expressed in the Department's enabling statutes and its regulations. *See N.J.S.A.* 30:1B–3 (identifying the "treatment" and "rehabilitation" of prisoners as within the Department's statutory mission); *see also N.J.A.C.* 10A:1–1.1 (noting the Department's obligation to, among other things, provide for the "treatment of persons committed to State correctional facilities").

Accordingly, we reject Ries's contention that his *.204 infraction must be vacated because he ingested cocaine and opiates while he was on escape status. The Department's rejection of that jurisdictional claim is sustained.

█ We likewise reject Ries's assertion on appeal that his guilt was not supported by substantial credible evidence. To the contrary, the proofs, including the positive drug tests, are unassailable. The Department's final decision clearly met the proof standards for administrative adjudication. *See Henry v. Rahway State Prison,* 81 *N.J.* 571, 579, 410 *A.*2d 686 (1980). The hearing procedures also comported with the applicable norms of due process. *See Avant v. Clifford,* 67 *N.J.* 496, 341 *A.*2d 629 (1975); *see also McDonald v. Pinchak,* 139 *N.J.* 188, 652 *A.*2d 700 (1995).

█ Lastly, we affirm the denial of contact visits to Ries as a permissible sanction within the discretion of the Commissioner. In that regard, we note that it is well settled that "a prisoner does not have a due process right to unfettered visitation." *Jackson v. Dep't of Corr.,* 335 *N.J.Super.* 227, 235, 762 *A.*2d 255 (App.Div. 2000), *certif. denied,* 167 *N.J.* 630, 772 *A.*2d 932 (2001). The imposition of such a sanction here, given the nature of Ries's wrongful conduct and also the risk that outsiders might attempt to supply drugs to him during visitations, was neither arbitrary nor capricious.

Affirmed.