6 A.3d 476 (2010)
416 N.J. Super. 512
Bradford SCOTT, Appellant,
v.
NEW JERSEY DEPARTMENT OF CORRECTIONS, Respondent.
Docket No. A-3332-08T2
Superior Court of New Jersey, Appellate Division.
Submitted September 14, 2010.
Decided October 13, 2010.
*477 Bradford Scott, appellant pro se.
Paula T. Dow, Attorney General, attorney for respondent (Kevin R. Jespersen, Assistant Attorney General, on the brief).
Before Judges WEFING, PAYNE and BAXTER.
The opinion of the court was delivered by
PAYNE, J.A.D.
In the period from July 1999 to July 2004, defendant committed three zero tolerance drug/alcohol offenses: *258 (refusing to submit to testing for prohibited substances) and two charges of *204 (use of any prohibited substances). See N.J.A.C. 10A:1-2.2 (definition of zero tolerance drug/alcohol policy); 10A:4-4.1 (prohibited acts); 10A:4-5.1(c) (sanctions for zero tolerance drug/alcohol offenses) and 10A:4-12 (zero tolerance policies). Defendant was sanctioned with, among other things, permanent loss of contact visits. On August 21, 2007, defendant sought reinstatement of his contact visits, but he was informed that they were "permanently lost." Defendant appealed, and we remanded for reconsideration, noting that N.J.A.C. 10A:18-6.20(b) permits an application for "reinstatement of contact visit privileges for an inmate who has been found guilty of a second or subsequent prohibited act identified in a zero tolerance policy as established in N.J.A.C. 10A:4-5.1 and 12 ... after the inmate has completed all consecutive sanctions imposed and has submitted a request to the Administrator [or] designee."
On remand, the Administrator denied defendant's request, stating:
[Y]our Disciplinary Record reflects that you permanently lost your contact visit privileges for three (3) separate zero tolerance infractions. In accordance with N.J.A.C. 10A:1-2.2; 10A:4-5.1 and in accordance with N.J.A.C. 10A:18-6.20 I have reviewed your request and the court's remand for consideration for restoration of contact visits. Be advised that your request for the restoration of your contact visits is denied. The use of narcotics within a correctional facility is *478 considered to be an extremely serious violation. In addition, the standard reads "permanent loss of contact visits." The Webster's dictionary meaning for "permanent" is as follows .... Based on all of these reasons your request for restoration of contact visits is denied.
Defendant again appealed.
N.J.A.C. 10A:1-2.2 provides a definition for "Zero Tolerance Drug/Alcohol Policy" stating that "inmates found guilty of drug/alcohol related prohibited acts as set forth in N.J.A.C. 10A:4-5.1(c) shall have their contact visit privileges terminated while housed in New Jersey State prisons and correctional facilities." In contrast, the definition of "Zero Tolerance for Misuse or Possession of an Electronic Communication Device Policy" merely states that violators "shall have their contact visit privileges terminated and shall be ineligible for consideration for any custody status lower than medium custody until after the contact visit privileges are reinstated."
Despite what appears to be a permanent prohibition of contact visits in the definitional section, N.J.A.C. 10A:4-5.1(c) provides:
Pursuant to the Zero Tolerance Drug/Alcohol Policy as defined in N.J.A.C. 10A:1-2.2, a finding of guilt to any of the following prohibited acts shall result in termination of contact visit privileges and ineligibility for consideration for any custody status lower than medium custody until after contact visit privileges are reinstated.
As stated previously, N.J.A.C. 10A:18-6.20(b) also permits reinstatement and particularly addresses circumstances in which the inmate has committed two or more zero tolerance offenses, permitting reinstatement at the discretion of the Administrator.
As the Department of Corrections (Department) notes, we upheld a permanent loss of contact visits as a permissible sanction for committing a zero tolerance drug offense in Ries v. Department of Corrections, 396 N.J.Super. 235, 240, 933 A.2d 638 (App.Div.2007). However, it does not appear that the permanence of "permanent" was raised in that case, nor was it raised in connection with our decision in Hamilton v. Department of Corrections, 366 N.J.Super. 284, 286, 841 A.2d 94 (App. Div.2004).
Defendant argues that he has served his sanctions and has not committed a zero tolerance offense since 2004. He argues further that the Administrator's decision to deny reinstatement was arbitrary and capricious, because it was founded in her understanding that a permanent sanction could not be modified, whereas the regulations establish that it can.
Our review of the regulations reveals a conflict between N.J.A.C. 10A:1-2.2, which appears to preclude reinstatement, and N.J.A.C. 10A:4-5.1(c) and 10A:18-6.20(b), which permit it. However, an examination of the history of the adoption of the governing regulations suggests that the retention of the absolute bar to reinstatement that can be inferred from the wording of N.J.A.C. 10A:1-2.2's definition of "Zero Tolerance Drug/Alcohol Policy" was inadvertent or, alternatively, that it should be voided.
The policy at issue was first proposed in 1998. See 30 N.J.R. 2810(a) (August 3, 1998). At that time, the Department of Corrections proposed the adoption of a zero tolerance drug/alcohol policy "to set forth the policy meaning and to establish the explicit objective of the Department to enforce rules and impose appropriate sanctions for infractions related to drug/alcohol possession/sale/use." The definition of that policy, as proposed for inclusion in N.J.A.C. 10A:1-2.2, provided:

*479 "Zero Tolerance Drug/Alcohol Policy" means a zero tolerance for the possession/sale/use by State prison inmates of any drugs, intoxicants or narcotic paraphernalia not prescribed for the inmate by medical or dental staff. This policy establishes that inmates found guilty of drug/alcohol related prohibited acts as set forth in N.J.A.C. 10A:4-5.1(c) and 5.2(c) shall have their contact visit privileges terminated while housed in New Jersey State prisons and correctional facilities in addition to being subject to administrative action and program requirements in accordance with N.J.A.C. 10A:4, Inmate Discipline.
Concurrently, the Department proposed a new paragraph, designated N.J.A.C. 10A:4-5.1(c), which stated:
(c) Pursuant to the Zero Tolerance Drug/Alcohol Policy as defined in N.J.A.C. 10A:1-2.2, a finding of guilt to any of the following prohibited acts shall result in termination of contact visit privileges:
The offenses for which defendant was found guilty were among the enumerated offenses to which the rule applied.
Additionally, the Department proposed a new regulation, designated N.J.A.C. 10A:18-6.20, which provided that "[a]n inmate may request the reinstatement of contact visit privileges that were terminated in accordance with N.J.A.C. 10A:4-5.1(c) or 5.2(c)"[1] and set forth the mechanism for doing so. However, paragraph (b) of that regulation stated:
(b) The reinstatement of contact visit privileges shall not be considered for an inmate who has been found guilty of a second or subsequent drug or alcohol related prohibited act as established in N.J.A.C. 10A:4-5.1(c) or 5.2(c).
The Department explained that: "Contact visits are commonly known to be the conduit for introducing contraband into correctional facilities" and the "strong correlation between contact visits and the introduction of drugs, intoxicants and narcotic paraphernalia is the basis for imposing disciplinary action terminating contact visits." Ibid. The proposed rules were adopted, effective November 2, 1998. See 30 N.J.R. 3965(a) (November 2, 1998).
However, in 2004, amendments were proposed to N.J.A.C. 10A:4-5.1 and 10A:18-6.20 to permit "consideration of reinstatement of contact visit privileges for an inmate who has been found guilty of a second or subsequent drug or alcohol related prohibited act." 36 N.J.R. 1657(a) (April 5, 2004). The reason for the proposed change was not specified. N.J.A.C. 10A:4-5.1(c) was proposed to state:
(c) Pursuant to the Zero Tolerance Drug/Alcohol Policy as defined in N.J.A.C. 10A:1-2.2, a finding of guilt to any of the following prohibited acts [including those committed by defendant] shall result in termination of contact visit privileges and ineligibility for consideration for any custody status lower than medium custody until after contact visit privileges are reinstated.
Similarly, an amendment to N.J.A.C. 10A:18-6.20(b) was proposed that stated:
(b) The reinstatement of contact visit privileges for an inmate who has been found guilty of a second or subsequent drug or alcohol related prohibited act as established in N.J.A.C. 10A:4-5.1 or 5.2 will be considered after the inmate has completed all consecutive 365-day sanctions imposed and has submitted a request to the Administrator or designee.
*480 No amendment to the zero tolerance definitional provision was proposed. No comments to the proposed amendments were received, and they were adopted, effective August 2, 2004. See 36 N.J.R. 3552(a) (August 2, 2004).
Regulations and regulatory amendments were adopted on an emergency basis effective November 15, 2005 to establish a zero tolerance for the misuse or possession of an electronic communication device policy. See 37 N.J.R. 4575(a) (December 5, 2005); see also 38 N.J.R. 993(a) (February 6, 2006). In that connection, N.J.A.C. 10A:18-6.20(b) was amended to delete the specific reference to "drug or alcohol related" and to broaden the provision to apply to "a prohibited act identified in a zero tolerance policy." Additionally, the reference to "365-day" sanctions was eliminated, since the applicable sanction was termination, not a specific time period.
It is noteworthy that, as we mentioned previously, the definition of the zero tolerance policy for misuse or possession of an electronic communication device, contained in N.J.A.C. 10A:1-2.2, required termination of contact visit privileges for inmates found to have committed a prohibited act, but further provided in terms, consonant with N.J.A.C. 10A:4-5.1, that such inmates "shall be ineligible for consideration for any custody status lower than medium custody until after the contact privileges are reinstated." That language was not added to the earlier-adopted definition of "Zero Tolerance Drug/Alcohol Policy" although considerations relating to the risk of visitors passing drugs or alcohol to inmates and the risk of their passing cell phones and pagers seem similar.
A proposal for the readoption and emendation of N.J.A.C. 10A:4 and the amendment of N.J.A.C. 10A:1-2.2 and 10A:18-6.20 was placed in the New Jersey Register on August 7, 2006. See 38 N.J.R. 3121(a). Although the definition of "Zero Tolerance Drug/Alcohol Policy" was amended at that time, the only change was to remove from it the reference to N.J.A.C. 10A:4-5.2(c). That reference was similarly deleted from N.J.A.C. 10A:18-6.20(b). No change of significance to the issue before us was made to N.J.A.C. 10A:4. The readoption occurred effective October 24, 2006, and the amendments were adopted, effective November 20, 2006. See 38 N.J.R. 4867(a) (November 20, 2006).
In the context of statutory interpretation, we are advised that: "`Statutes that deal with the same matter or subject should be read in pari materia and construed together as a "unitary and harmonious whole."'" Marino v. Marino, 200 N.J. 315, 330, 981 A.2d 855 (2009) (quoting St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 14-15, 878 A.2d 829 (2005)) (quoting In re Adoption of a Child by W.P. and M.P., 163 N.J. 158, 182-83, 748 A.2d 515 (2000) (Poritz, C.J., dissenting)). When that exercise is not possible, and when one statute is general and the other specific, the latter will prevail over the former. State v. Cagno, 409 N.J.Super. 552, 600, 978 A.2d 921 (App.Div.2009). In the present case, the definitional provisions of N.J.A.C. 10A:1-2.2 are arguably more general than N.J.A.C. 10A:4-5.1(c), which appears in a section concerning prison discipline, and N.J.A.C. 10A:18-6.20, which appears in a section concerning "mail, visits and telephone." Thus, the remedy of reinstatement contained in the latter two regulations would, pursuant to this rule of statutory construction, prevail over the more general prohibition of the former regulation.
A similar result is reached by employing another rule of statutory construction:

*481 When a subsequent enactment covering a field of operation coexistent with a prior statute cannot by any reasonable construction be given effect while the prior law remains in existence because of irreconcilable conflict between the two acts, the latest legislative expression prevails, and the prior law yields to the extent of the conflict.
[Kemp by Wright v. State, Cnty. of Burlington, 147 N.J. 294, 307, 687 A.2d 715 (1997) (quoting 1A Norman J. Singer, Sutherland Statutory Construction § 2309, at 338-39 (5th ed.1993) (footnotes omitted)).]
Because N.J.A.C. 10A:4-5.1(c) and 10A:18-6.20(b) were adopted effective August 2, 2004, whereas N.J.A.C. 10A:1-2.2 was adopted effective November 2, 1998, we are instructed to consider that portion of the earlier definitional regulation appearing to prohibit reinstatement of contact visits to be no longer in effect.
The result thus achieved through utilization of standard precepts of statutory construction appears to best effect the intent of the Department of Corrections, which purposefully amended its former ban on reinstatement of contact visits for those found guilty of two or more zero tolerance infractions to make reinstatement a possibility. Were we to enforce N.J.A.C. 10A:1-2.2 literally, as did the Administrator, the Department's later amendments would be rendered a nullity.
As a consequence of the foregoing, we reverse the Administrator's determination as unfounded in law and thus arbitrary, capricious and unreasonable. Henry v. Rahway State Prison, 81 N.J. 571, 579-80, 410 A.2d 686 (1980); Campbell v. Dept. of Civil Serv., 39 N.J. 556, 562, 189 A.2d 712 (1963). The matter is remanded for a redetermination pursuant to N.J.A.C. 10A:18-6.20(b) premised upon a consideration of defendant's conduct in the period after all consecutive sanctions were completed.
Reversed and remanded.
NOTES
[1] N.J.A.C. 10A:4-5.2 pertains to the Youth Complex and is not relevant to this case. The reference was eliminated in a subsequent regulatory amendment.