92 A.3d 1181

BERGEN COUNTY PBA LOCAL 134, PLAINTIFF–RESPONDENT, AND BERGEN COUNTY SHERIFF MICHAEL SAUDINO, PLAINTIFF/INTERVENOR–RESPONDENT, v. KATHLEEN A. DONOVAN, BERGEN COUNTY EXECUTIVE, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 13, 2014—Decided May 30, 2014.

188

Before Judges REISNER, OSTRER and CARROLL.

*Matthew J. Giacobbe* argued the cause for appellant (*Cleary, Giacobbe, Alfieri, Jacobs,* attorneys; *Mr. Giacobbe* and *Adam S. Abramson–Schneider,* of counsel and on the brief).

*Stephen B. Hunter* argued the cause for respondent, Bergen County PBA Local 134 (*Detzky & Hunter,* attorneys; *Mr. Hunter,* of counsel and on the brief).

*John McCann* argued the cause for respondent Michael Saudino, Bergen County Sheriff (*C. Elston & Associates,* attorneys; *Catherine M. Elston,* of counsel and on the brief; *Cathlene Y. Banker* on the brief).

The opinion of the court was delivered by

CARROLL, J.S.C. (temporarily assigned).

This appeal presents the questions (1) whether the Bergen County Sheriff (Sheriff) has the exclusive statutory authority to negotiate salary payments, increases, and other economic benefits with the employees of the Sheriff's Department, subject to the requirements of *N.J.S.A.* 40A:9–117; and (2) whether the court, rather than the New Jersey Public Employment Relations Commission (PERC), is the appropriate forum to adjudicate this dispute. We answer both questions in the affirmative, and affirm the trial court's judgment.

I.

In 1972, the Legislature enacted the Optional County Charter Law (Charter Law), *N.J.S.A.* 40:41A–1 to –149, that allows counties to select from a variety of forms of government, including the county executive plan. Bergen County adopted the county executive form of government in 1986, thereby opting to "be governed by an elected board of freeholders and an elected county executive and by such other officers and employees as may be duly appointed pursuant to this act, general law, or ordinance." *N.J.S.A.* 40:41A–32(a). "In each county operating under this article, the term 'governing body' of the county shall be construed to include both the board of freeholders and the county executive." *N.J.S.A.* 40:41A–32(b).

Plaintiff Bergen County Local PBA 134 (Local 134) represents all Bergen County Sheriff's officers and correction officers, up to and including the rank of lieutenant. There are approximately 426 member employees within this law enforcement negotiations unit. Since 1986, Local 134 members worked under agreements

collectively negotiated with the Sheriff, without participation by the County Executive. In November 2010, Local 134 and the Sheriff began negotiating an agreement for the period January 1, 2011, through December 31, 2014.

The landscape changed in May 2011, when the Bergen County Executive, Kathleen A. Donovan, in letters to Sheriff Michael Saudino and to Local 134, made several requests, via the County Administrator and the County's labor counsel, to participate in the negotiations and "represent her joint employer interests relative to the economic terms and conditions of employment for the members of the bargaining unit." In response, Local 134 refused to allow any county representative, including the County Executive, to intervene in its negotiations with the Sheriff, asserting that under *N.J.S.A.* 40A:9–117, the Sheriff "is the sole employer of the Correction Officers and Sheriff's Officer[s] included within PBA Local 134's unit."

In May 2011, the County, on behalf of the County Executive, filed with PERC: (1) an unfair practice charge against Local 134 for refusing to negotiate with the County Executive, "the statutorily designated negotiator for all economic terms with respect to County of Bergen contracts," in violation of *N.J.S.A.* 34:13A–5.4(b)(3) and (5) of the New Jersey Employer–Employee Relations Act, *N.J.S.A.* 34:13A–1 to –43 (NJEERA); and (2) an application for interim relief enjoining Local 134 from continuing to negotiate the economic terms of its successor collective negotiations agreement without the participation of the County Executive or her designee. Local 134 voluntarily suspended its negotiations with the Sheriff as a result of the PERC filing.

On June 16, 2011, PERC's designee granted the Sheriff's request to intervene, and on July 18, 2011, the designee issued an interlocutory decision denying the County its requested interim relief that would have stopped Local 134 from negotiating the economic terms of any successor agreement without the County Executive. Negotiations again resumed between the Sheriff and

Local 134, without the participation of the County Executive or other County representative.

On August 8, 2011, the County filed a motion with PERC for reconsideration. A decision on that motion lingered for more than a year, and in the interim the Sheriff and Local 134 signed a Memorandum of Agreement (MOU) on November 16, 2011, agreeing to various contract modifications subject to ratification by Local 134's members. In February 2012, following its ratification, the Sheriff and Local 134 executed the 2011–2014 Agreement. Local 134 and the Sheriff were the only signatories, and the Sheriff presented the 2011–2014 Agreement to the Bergen County Freeholders.

On May 2, 2012, the Freeholders, by Resolution # 623–12, "adopt[ed] and accept[ed] the collective bargaining agreement negotiated by and between the Bergen County Sheriff and [Local 134,] effective as of January 1, 2012," even though the County Executive did not support or approve the agreement, consent to it, or present it to the Freeholders for approval. In June 2012, the Freeholders adopted by resolution the County's annual budget for fiscal year 2012, which had been presented by the County Executive, and which included the Sheriff's proposed and anticipated revenues and appropriations for salaries, wages, and other financial expenses for the Sheriff's Department.

On August 8, 2012, after the County Executive refused to implement the 2011–2014 Agreement's salary payments, increases, and other economic benefits, such as clothing allowances, Local 134 sued the County Executive to compel enforcement of its terms. Local 134 further verified that there were sufficient funds in the approved 2011 and 2012 County budgets to implement all of the negotiated economic terms in the Agreement, and that the Agreement "provide[s] for compensation in accordance with the generally accepted County salary ranges for the other County law enforcement negotiations units representing officers within the Bergen County Police Department as well as Investigators and

Superior Officers employed within the Bergen County Prosecutor's Office."

On September 6, 2012, some thirteen months after its filing, PERC issued a written decision granting the County's motion for reconsideration, vacating the designee's interlocutory decision, and referring the County's unfair practice charge against Local 134 "to the Director of Unfair Practices for further processing." *In re PBA Local 134,* P.E.R.C. No. 2013-8 (Sept. 6, 2012).

Notwithstanding PERC's belated decision on the reconsideration motion, on December 19, 2012, Judge Joseph Conte issued a written decision in Local 134's lawsuit directing the County Executive to fully implement the 2011-2014 Agreement, and to authorize the prompt payment of all funds due thereunder. The judge first discussed whether the court or PERC had jurisdiction to resolve the issue of whether the 2011-2014 Agreement should be implemented. He found that "the issue in this case is appropriate for review by the Superior Court because it involves a question of law as to the interpretation of *N.J.S.A.* 40A:9-117 and its conflict with *N.J.S.A.* 40:41A-36."

Turning to the merits, and finding that no genuine issues of material fact existed, the judge concluded:

[t]he applicable statute, *N.J.S.A.* 40A:9-117[,] is clear in that the sheriff has the power to fix the compensation in accordance with the prescriptions of the statute for its officers. The legislative history and intent evidence a desire to give the sheriff the sole power to do so, without the intervention of the county executive.

The judge further held that "the county, through the Board of Chosen Freeholders, reviewed and approved the collective negotiations agreement, therefore satisfying any claim that the [c]ounty was prevented from participating in such negotiations." Thus, the negotiated agreement was valid, and the County Executive violated the contract rights of the Sheriff's employees by refusing to implement the contract. He granted summary judgment and ordered the County Executive to implement the 2011-2014 Agreement negotiated between Local 134 and the Sheriff. This appeal by the County Executive followed.

## II.

### A.

██ We first address the interplay between the statutory provisions that frames the parties' arguments.

Under the county executive form of government, the county executive "shall" exercise "the executive power of the county," and "shall" perform the following executive and administrative duties:

> a. Report annually to the board of freeholders and to the people on the state of the county, and the work of the previous year ...;
>
> b. Prepare and submit to the board for its consideration and adoption an annual operating budget and a capital budget, establish the schedules and procedures to be followed by all county departments, offices and agencies in connection therewith, and supervise and administer all phases of the budgetary process;
>
> c. Enforce the county charter, the county's laws and all general laws applicable thereto;
>
> d. Supervise the care and custody of all county ... agencies;
>
> e. Supervise the collection of revenues, audit and control all disbursements and expenditures and prepare a complete account of all expenditures;
>
> f. *Sign all contracts, bonds or other instruments requiring the consent of the county;*
>
> ....
>
> h. Develop, install and maintain centralized budgeting, personnel and purchasing procedures as may be authorized by the administrative code;
>
> i. *Negotiate contracts for the county subject to board approval;* make recommendations concerning the nature and location of county improvements and execute improvements determined by the board;
>
> j. Assure that all terms and conditions, imposed in favor of the county or its inhabitants in any ... other contract, are faithfully kept and performed....
>
> [*N.J.S.A.* 40:41A-36 (emphasis added).]

For counties operating under the county executive form of government, the Board of Chosen Freeholders exercises "the legislative power of the county," which

> shall be exercised by ordinance, except for the exercise of the following powers which are required to be, or are permitted to be, exercised by resolution:
>
> ....
>
> n. Approval of contracts presented by the county executive....;
>
> [*N.J.S.A.* 40:41A-38.]

The County Executive argues that the court erred in finding that *N.J.S.A.* 40A:9–117 and its legislative history afford the Sheriff exclusive right and autonomy to act as the sole public employer to negotiate all terms and conditions of employment for the employees in his department, without her presence. She contends that nowhere is the word "negotiate" mentioned in any part of that statute or its legislative history. She points out that the Legislature, by contrast, expressly provides in *N.J.S.A.* 40:41A–36(i) that the County Executive shall negotiate all contracts for the County subject to approval by the Freeholders.

The County Executive further argues that the court erred in failing to recognize that, for counties adopting the county executive plan, the Charter Law in *N.J.S.A.* 40:41A–38(n) requires the County Executive to present any and all contracts to the Freeholders before approval. She contends that this duty is more than just ministerial, and that the court's decision finding the 2011–2014 Agreement valid eviscerates a county executive's statutory duties and rights by allowing a collective negotiation agreement to stand even though the County Executive did not present it to the Freeholders for final approval. She further claims that her authority in *N.J.S.A.* 40:41A–36(b) over the County's annual budget would be usurped if the Sheriff can present contracts to the Freeholders.

The Sheriff and Local 134 in turn argue that the more general statutory provisions upon which the County Executive relies conflict with, and must yield to, *N.J.S.A.* 40A:9–117. That statute, they maintain, specifically confers upon the Sheriff the exclusive authority to collectively negotiate the economic terms and conditions of employment for the sheriff department's employees.

*N.J.S.A.* 40A:9–117 governs compensation for employees of the sheriff's department. A year before the Charter Law was enacted in 1972, the statute read:

> The sheriff shall select and employ the necessary deputies, chief clerks and other personnel. They shall receive such compensation as shall be recommended by the sheriff and approved by *the board of chosen freeholders....*

[*L.* 1971, *c.* 200 (eff. July 1, 1971) (emphasis added).]

In 1981, after the Charter Law was enacted, the Legislature amended *N.J.S.A.* 40A:9–117 to refer to "the governing body" rather than to "the board of chosen freeholders":

> The sheriff shall select and employ the necessary deputies, chief clerks and other personnel. They shall receive such compensation as shall be recommended by the sheriff and approved by *the governing body* ....
>
> [*L.* 1981, *c.* 75, § 1 (eff. Dec. 31, 1981) (emphasis added).]

In September 1982, the Legislature enacted "An Act concerning sheriff's officers," *L.* 1982, *c.* 133, creating *N.J.S.A.* 40A:9–117.10, which also referred to "the governing body," but added an extra layer of compliance with the county's "budgetary procedures":

> [s]heriff's officers appointed under the provisions of this act shall have the duties, benefits and powers conferred by law on sheriff's officers, and their compensation shall be as recommended by the sheriff and approved by the governing body of the county, pursuant to the budgetary procedures established by the county.
>
> [*L.* 1982, *c.* 133, § 5 (eff. Sept. 14, 1982).]

On April 19, 1984, both *N.J.S.A.* 40A:9–117 and 40A:9–117.10 were amended to their current forms. *N.J.S.A.* 40A:9–117 now states:

> The sheriff shall select and employ the necessary deputies, chief clerks and other personnel. The sheriff shall fix the compensation they shall receive in accordance with the generally accepted county salary ranges and within the confines of the sheriff's budget allocation set by the governing body ....

[*L.* 1984, *c.* 35, § 1 (eff. Apr. 19, 1984).] *N.J.S.A.* 40A:9–117.10 provides:

> [s]heriff's officers appointed under the provisions of this act shall have the duties, benefits and powers conferred by law on sheriff's officers, and their compensation shall be as fixed by the sheriff in accordance with the generally accepted county salary ranges and within the confines of the sheriff's budget allocation set by the governing body.
>
> [*L.* 1984, *c.* 35, § 4 (eff. Apr. 19, 1984).]

The court's "task in statutory interpretation is to determine and effectuate the Legislature's intent." *Bosland v. Warnock Dodge, Inc.*, 197 *N.J.* 543, 553, 964 *A.*2d 741 (2009); *accord H.J. Bailey Co. v. Neptune Twp.*, 399 *N.J.Super.* 381, 385, 944 *A.*2d 706 (App.Div.2008). The court's analysis should begin with the words of the enactment, which are to be given their generally

accepted meaning, and are to be read in context of the legislation as a whole. *In re Plan for the Abolition of Council on Affordable Hous.*, 214 *N.J.* 444, 467–68, 70 *A.*3d 559 (2013); *Bosland, supra,* 197 *N.J.* at 553, 964 *A.*2d 741; *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005).

When the language is clear and unambiguous, and subject to only one interpretation, the court must infer the Legislature's intent from the statute's plain meaning. *In re Plan for the Abolition of Council on Affordable Hous., supra,* 214 *N.J.* at 467, 70 *A.*3d 559; *Bosland, supra,* 197 *N.J.* at 553–54, 964 *A.*2d 741; *DiProspero, supra,* 183 *N.J.* at 492–93, 874 *A.*2d 1039; *Fisch v. Bellshot,* 135 *N.J.* 374, 383, 640 *A.*2d 801 (1994). The court can look at extrinsic evidence, such as legislative history, judicial interpretation, and rules of statutory construction, only if the statutory language is ambiguous. *In re Plan for Abolition of Council on Affordable Hous., supra,* 214 *N.J.* at 468, 70 *A.*3d 559; *Bosland, supra,* 197 *N.J.* at 553–54, 964 *A.*2d 741; *DiProspero, supra,* 183 *N.J.* at 493–94, 874 *A.*2d 1039; *State v. Fortin,* 178 *N.J.* 540, 607, 843 *A.*2d 974 (2004). A court may also consider extrinsic evidence if "a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at odds with the plain language." *DiProspero, supra,* 183 *N.J.* at 493, 874 *A.*2d 1039.

Guided by these principles, we find the language of *N.J.S.A.* 40A:9–117 clear; the sheriff "shall" select, employ, and "fix the compensation" of the necessary deputies, chief clerks and other personnel in his or her department, subject only to certain budgetary and salary range requirements. Accordingly, the sheriff, not the county executive, is the exclusive employer and hiring authority for the sheriff's office and its employees, and can solely negotiate the collective negotiations agreement for those employees. *See also Commc'ns Workers of Am., AFL–CIO, Locals 1040 & 1081 v. Treffinger,* 291 *N.J.Super.* 336, 351, 677 *A.*2d 295 (Law Div.1996) (stating that the sheriff is the exclusive employer for purposes of requiring state residency).

Given the clear unambiguous language of the statute, it is unnecessary to analyze the statutory history or other extrinsic evidence of legislative intent, or apply other dictates of statutory interpretation. Nonetheless, undertaking those analyses yields a similar conclusion.

As noted, a year prior to the adoption of the Charter Law in 1972, the Legislature enacted *N.J.S.A.* 40A:9–117 to provide that employees hired by the sheriff "shall receive such compensation as shall be recommended by the sheriff and approved by the board of chosen freeholders." *L.* 1971, *c.* 200 (eff. July 1, 1971). This restriction on the sheriff's power to set salaries continued after the Charter Law. In the early 1980's, the Legislature amended *N.J.S.A.* 40A:9–117 and enacted *N.J.S.A.* 40A:9–117.10, but the substance remained essentially the same. That is, they provided that employees hired by the sheriff "shall receive such compensation as shall be recommended by the sheriff and approved by the governing body." *L.* 1981, *c.* 75, § 1 (eff. Dec. 31, 1981), and *L.* 1982, *c.* 133, § 5 (eff. Sept. 14, 1982).

By contrast, when the Legislature amended *N.J.S.A.* 40A:9–117 and –117.10 in 1984, it is clear from the extrinsic evidence that its intent was to designate county sheriffs as the sole public employers for their departments.

The Senate County and Municipal Government Committee Statement for Senate No. 1060 (Feb. 27, 1982), accompanying *N.J.S.A.* 40A:9–117, *L.* 1984, *c.* 35, stated:

> Senate Bill No. 1060 would transfer the power to fix the compensation of sheriff's officers and certain other sheriff's employees from the county governing body to the sheriff. The sheriff would be required to fix compensation of these employees "in accordance with the county budget."
>
> The Committee amendments would specify that the compensation shall be fixed by the sheriff in accordance with the generally accepted county salary ranges and within the confines of the sheriff's budget allocation set by the governing body.

The Governor's statement when he signed *N.J.S.A.* 40A:9–117, *L.* 1984, *c.* 35, read:

> Governor Thomas H. Kean today signed legislation to provide that county sheriffs fix the salaries of their employees, rather than Boards of Freeholders.

. . . .

The legislation, effective immediately, changes current law to permit sheriffs to set salaries of departmental employees in accordance with generally accepted county salary ranges and within the limits of departmental budgets.

■ From these statements, we conclude that it has been the Legislature's intent since 1984 that the sheriff solely negotiate the compensation of employees in his or her department without the county executive's involvement.[1] Indeed, negotiation is the only way a sheriff can set compensation for union employees. An amendment to a statute ordinarily implies a purposeful alteration in substance. *Stauhs v. Bd. of Review*, 93 *N.J.Super.* 451, 457, 226 *A.*2d 182 (App.Div.1967).

Finally, basic tenets of statutory construction also support the conclusion that the sheriff can fix the compensation of employees in his or her department without the county executive's involvement in the negotiations.

■ It is a general principle of statutory construction that the Legislature is presumed to be aware of its own statutory enactments, and to not have intended to create intentional conflicts between them. *Headen v. Jersey City Bd. of Educ.*, 212 *N.J.* 437, 450, 55 *A.*3d 65 (2012); *Brewer v. Porch*, 53 *N.J.* 167, 174, 249 *A.*2d 388 (1969). Thus, when the Legislature amended *N.J.S.A.* 40A:9–117 in 1984, it presumably was aware that the Charter Law in 1972 gave the county executive the right under *N.J.S.A.* 40:41A–36(i) to "[n]egotiate contracts for the county subject to board approval."

■ It is also a general principle of statutory construction that specific laws prevail over inconsistent general laws. *Kingsley v. Wes Outdoor Adver. Co.*, 55 *N.J.* 336, 339, 262 *A.*2d 193 (1970); *State by State Highway Comm'r v. Dilley*, 48 *N.J.* 383, 387, 226

---

[1] We reject the contrary conclusion reached in *Prunetti v. Mercer Cnty. Bd. of Chosen Freeholders*, 350 *N.J.Super.* 72, 138, 794 *A.*2d 278 (Law Div.2001), where the court's analysis focused on *N.J.S.A.* 40:41A–36(i), and failed to address or consider the countervailing statutory effect of *N.J.S.A.* 40A:9–117.

A.2d 1 (1967); *Goff v. Hunt,* 6 *N.J.* 600, 607, 80 A.2d 104 (1951); *Scott v. N.J. Dep't of Corrs.,* 416 *N.J.Super.* 512, 519, 6 A.3d 476 (App.Div.2010). *N.J.S.A.* 40:41A–36(i) is a general law giving the county executive the right to negotiate contracts, but *N.J.S.A.* 40A:9–117 expressly gave the sheriff specific rights in 1984 to select, employ, and "fix the compensation" of his or her employees; thus, the later statute trumps the inconsistent general law.

We also reject the County Executive's interpretation of *N.J.S.A.* 40:41A–38(n), that a county executive must present all county contracts to the board of freeholders for approval. Rather, the statute by its terms simply provides that when the county executive presents a contract to the freeholders, the board can approve it by resolution rather than ordinance. Nor can the statute be read as restricting the board's power to approve only those contracts presented by the county executive.

### B.

■ We next address the County Executive's argument that the court lacked jurisdiction to decide Local 134's action. She contends that the court should have transferred the case to PERC, because PERC has exclusive and primary jurisdiction to determine the appropriate parties at a bargaining table, and that its jurisdiction cannot be circumvented simply because PERC will need to interpret the implication and application of the various statutes that we have previously discussed. We disagree.

NJEERA requires public employers to negotiate with employee associations regarding terms and conditions of employment, *N.J.S.A.* 34:13A–5.3, and it prohibits those associations from "[r]efusing to negotiate in good faith with a public employer." *N.J.S.A.* 34:13A–5.4(b)(3). NJEERA therefore gives PERC exclusive jurisdiction to hear unfair practice charges under *N.J.S.A.* 34:13A–5.4(a) and (b). *N.J.S.A.* 34:13A–5.4(c); *City of Hackensack v. Winner,* 82 *N.J.* 1, 26, 410 A.2d 1146 (1980); *Galloway Twp. Bd. of Educ. v. Galloway Twp. Ass'n of Educ. Secretaries,* 78

*N.J.* 1, 8 n. 2, 393 *A.*2d 207 (1978). *N.J.S.A.* 34:13A–5.4(c) provides:

> The commission shall have exclusive power as hereinafter provided to prevent anyone from engaging in any unfair practice listed in [*N.J.S.A.* 34:13A–5.4(a) and (b) ]. Whenever it is charged that anyone has engaged or is engaging in any such unfair practice, the commission, or any designated agent thereof, shall have authority to issue and cause to be served upon such party a complaint stating the specific unfair practice charged and including a notice of hearing containing the date and place of hearing before the commission or any designated agent thereof. . . .

*But see Bd. of Educ. of Twp. of Middletown v. Middletown Twp. Educ. Ass'n,* 352 *N.J.Super.* 501, 506–07, 800 *A.*2d 286 (Ch.Div. 2001) ("[E]xclusive power" in *N.J.S.A.* 34:13A–5.4(c) does not deprive court from using "inherent equity power.").

Here, the parties' claims raised no unfair labor practices or questions about the scope of negotiations that require deference to PERC's exclusive and primary jurisdiction under *N.J.S.A.* 34:13A–5.4. Rather, the court dealt with the enforceability of an existing collective negotiations agreement, that had already been entered into between the parties, and approved by the Freeholders, during the thirteen-month period it took for PERC to eventually assert jurisdiction over the dispute.

A court has jurisdiction to determine whether a county is bound by an existing employment condition. *Cf. Twp. of Middletown v. Middletown PBA Local 124,* 334 *N.J.Super.* 512, 515, 760 *A.*2d 326 (App.Div.1999) ("The question is not whether the Township is bound by an existing employment condition, but whether that employment condition has been changed."), *aff'd o.b.,* 166 *N.J.* 112, 764 *A.*2d 940 (2000). Moreover, issues of statutory interpretation, such as those involved here, are matters for which courts are uniquely suited. *Borough of Matawan v. Monmouth Cnty. Bd. of Taxation,* 51 *N.J.* 291, 297, 240 *A.*2d 8 (1968).

Finally, as the County Executive impliedly concedes, ultimately we retain the authority to review the merits of the dispute, whether that dispute emanates from the court or from PERC. Thus any error in the trial court's assumption of jurisdiction over

the matter here was harmless, in view of our similar conclusion that the Sheriff is the appropriate party to negotiate with Local 134, consistent with the provisions of *N.J.S.A.* 40A:9–117.

Affirmed.