NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2951-14T4

IN THE MATTER OF JOHN RESTREPO,
DEPARTMENT OF CORRECTIONS.

APPROVED FOR PUBLICATION

March 27, 2017

APPELLATE DIVISION

_____

Submitted December 13, 2016- Decided March 27, 2017

Before Judges Fisher, Leone, and Vernoia.

On appeal from the Civil Service Commission,
CSC Docket No. 2014-2092.

Sciarra & Catrambone, attorneys for
appellant John Restrepo (Charles J. Sciarra,
of counsel; Christopher A. Gray, on the
briefs).

Christopher S. Porrino, Attorney General,
attorney for respondent New Jersey
Department of Corrections (Melissa H. Raksa,
Assistant Attorney General, of counsel;
Christopher M. Kurek, Deputy Attorney
General, on the briefs).

Christopher S. Porrino, Attorney General,
attorney for respondent New Jersey Civil
Service Commission (Todd A. Wigder, Deputy
Attorney General, on the statement in lieu
of brief).

The opinion of the court was delivered by

LEONE, J.A.D.

Appellant John Restrepo appeals the February 4, 2015

decision of the Civil Service Commission (Commission)

terminating his employment with the Department of Corrections

(DOC). His appeal raises the issue of whether the timeliness of Commission decisions in disciplinary cases involving law enforcement officers and firefighters is governed by the recent legislation addressing such cases, L. 2009, c.16 (2009 Act), or by the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15.

We hold that the 2009 Act governs. Under the 2009 Act, the Commission's decision was timely. Moreover, the decision was not arbitrary, capricious, or unreasonable. Accordingly, we affirm.

I.

We derive the following facts from the findings and evidence before the Administrative Law Judge (ALJ) and the Commission.

Restrepo worked for the DOC for approximately six years. He was commended for "a job well done in dealing with the terrible impact of Hurricane Sandy" in Fall 2012 and for finding two shanks during a cell search in June 2012. Restrepo's record was free from disciplinary infractions.

On December 22, 2013, Restrepo was a senior corrections officer (SCO) at Northern State Prison (Prison). He was assigned to the Prison's Housing Unit F-300, East Side (F3E). F3E consists of a housing wing comprised of two floors and forty

prison cells, with two prisoners assigned to each cell. F3E also encompasses a "sally port," a secure entryway into F3E which is monitored by the officer on duty in F3E. The Local Control Point (LCP) is located on the other side of the "sally port." In the LCP, on-duty corrections officers can monitor who enters the East Side and West Side wings and control the opening and closing of the cell doors in those wings. A restroom is located in the LCP, and this is where on-duty officers may use the bathroom. The LCP is separate from F3E and therefore not part of Restrepo's post in F3E.

Two separate physical altercations between inmates broke out in F3E while Restrepo was on duty on December 22. Lieutenant Andre Fleming, Restrepo's supervisor, investigated the altercations and testified to the following.

The first physical altercation occurred between 6:28 a.m. and 7:36 a.m., when several inmates gained access to another inmate's cell. Restrepo was not at his post in F3E when this altercation arose.

The second altercation occurred around 12:18 p.m., when some of the inmates involved in the first altercation began fighting. Restrepo was at his post for this altercation and was able to break up and report the fight.

When Lieutenant Fleming inquired into Restrepo's earlier absence, Restrepo submitted a statement that he was sick and using the restroom in the LCP. Restrepo also submitted a doctor's note dated December 21, 2013, saying he visited a doctor and was treated for a stomach virus on that date.

Lieutenant Fleming reviewed a security video from F3E. The video showed Restrepo was at his post and performed his early morning inmate count. Restrepo left his post in F3E at 6:28 a.m. and returned at 7:36 a.m., according to the timestamp on the video. Thus, Restrepo was absent from his post for sixty-eight minutes. He did not call for relief during this period. Fleming testified that for an officer to properly obtain relief from his post, the officer should notify his supervisor to request the relief and the supervisor will send someone to temporarily relieve the officer from his post.

Security Major Michael Chrone testified the Prison Custody Post Orders (Post Orders) and the DOC's Law Enforcement Personnel Rules & Regulations (DOC Rules) explicitly provide instructions for what an officer needs to do before leaving his post. The Post Orders provide: "Housing Unit officers are not to leave their assigned post unless properly relieved by another officer or permission is granted from the Shift Commander." The DOC Rules provide: "Except as predetermined by emergency

response procedures, an officer assigned to a post shall not leave that post without permission of the supervisor, or until properly relieved."

Major Chrone added, through his twenty-one-year career in corrections, "[he] was always instructed . . . to call for [] relief . . . . either via phone or via radio for your sergeant to get you relieved to the use the restroom, meal break, so on and so forth." Restrepo was equipped with a radio, on which he could have called a supervisor and requested relief by another officer so he could use the restroom.

The DOC issued a preliminary Notice of Disciplinary Action against Restrepo charging him with neglect of duty, N.J.A.C. 4A:2-2.3(a)(7), and other violations. The preliminary notice advised Restrepo removal was a possible punishment for his charged offenses. After a hearing, a final Notice of Disciplinary Action was issued, removing Restrepo from his position effective February 21, 2014.

Restrepo simultaneously appealed the decision to the Commission and the Office of Administrative Law (OAL) pursuant to N.J.S.A. 40A:14-202(d). After a hearing, the ALJ issued his initial decision on November 25, 2014. He made the following factual findings:

> SCO Restrepo admitted to leaving his post in the F3E unit for a period of 68 minutes on

December 22, 2013 to use the bathroom in the LCP. Both the Custody Post Orders and [DOC Rules] provide that any time an officer needs to leave his assigned post, it is necessary to contact the officer's supervisor to request permission to be properly relieved. As a result, during his absence, three inmates entered the cell of another inmate and began to fight. This fight was not reported, and was not discovered until Lt. Fleming conducted his investigation and reviewed the video surveillance of the F3E unit for December 22, 2013. Later that same day, the same exact inmates were involved in a second fight, which was seen and reported by SCO Restrepo. The second fight may have been prevented had SCO Restrepo been on his assigned post and either witnessed the first altercation or his presence may have prevented the [first] fight from occurring in the first place. By failing to contact a supervisor prior to leaving his post, SCO Restrepo failed and neglected his duties to protect the inmates whom he was responsible to oversee. This failure resulted in inmates fighting, which created a danger to all of the inmates in the F3E unit. SCO Restrepo violated [the Post] Orders and the [DOC Rules] when he went to the bathroom without first obtaining permission or being properly relieved.

The ALJ found Restrepo's argument that he was allowed to be in the bathroom for more than an hour was "at best pretextual and in the context of a prison environment simply unconvincing" and "casts doubt with respect to [his] ability to exercise good judgment." The ALJ found Restrepo neglected his duty in violation of N.J.A.C. 4A:2-2.3(a)(7).

6                                                    A-2951-14T4

The ALJ also found Restrepo's negligent dereliction was serious. Nonetheless, the ALJ recommended the Commission modify the discipline to a six-month suspension because removal was too harsh of a punishment when considering "the absence of any prior discipline."

On February 4, 2015, the Commission issued a four-page final administrative action. The Commission adopted the factual findings of the ALJ, agreed with the ALJ regarding the charges, but disagreed with the ALJ's modification of the penalty, finding Restrepo's misconduct was "egregious" and "created an extreme safety issue." Restrepo appeals.

                                    II.

"Appellate courts have a 'limited role' in the review of [Commission] decisions." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). "An appellate court affords a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (citation omitted). "In order to reverse an agency's judgment, an appellate court must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Stallworth, supra, 208 N.J. at 194 (quoting Henry,

*supra*, 81 *N.J.* at 579-80) (alteration in original). We must hew to that standard of review.

## III.

Restrepo first argues the decision of the Commission was untimely, and therefore the decision of the ALJ recommending a six-month suspension should be deemed final under *N.J.S.A.* 52:14B-10 of the APA or *N.J.S.A.* 40A:14-204 of the 2009 Act. We must first determine which of those statutory schemes applies here.

Cases involving the Commission have long been considered under the APA. The APA provides that, in contested cases, after the ALJ issues a recommended report and decision, the head of the agency is required to "adopt, reject or modify" the ALJ's recommendations "no later than 45 days after receipt of such recommendations." *N.J.S.A.* 52:14B-10(c). "Unless the head of the agency modifies or rejects the report within [the forty-five-day] period, the decision of the [ALJ] shall be deemed adopted[.]" *Ibid.* However, "for good cause shown, upon certification by the [OAL] director and the agency head, the time limits herein may be subject to a single extension of not more than 45 days. Any additional extension of time shall be subject to, and contingent upon, the unanimous agreement of the parties." *Ibid.*; see *N.J.A.C.* 1:1-18.8(e).

In 2009, our Legislature enacted the 2009 Act, entitled "An Act Concerning the Suspensions of Certain Law Enforcement Officers and Firefighters," largely codified at N.J.S.A. 40A:14-200 to -212. It defines "Law enforcement officer" and "Law enforcement agency" to include those statutorily empowered to act for the "detention, or rehabilitation of persons violating the criminal laws of this State." N.J.S.A. 40A:14-200. The parties do not dispute the 2009 Act applies to DOC officers. The 2009 Act provides that an officer appealing imposition of discipline "shall file his appeal simultaneously with [the OAL] and [the Commission]" to facilitate the timely rendering of a final determination. N.J.S.A. 40A:14-202(d). "Within 45 days of receiving [the ALJ's] decision, the commission shall complete its review and issue its final determination." N.J.S.A. 40A:14-204. "[H]owever, the commission, at its discretion, may extend its review period by no more than an additional 15 days." Ibid. The Commission may obtain a second extension "for good cause" if it gives "written notice to the Chief Administrative Law Judge" and the parties and the Chief ALJ decides "the review period shall be extended." Ibid. If the Commission fails to issue its final decision within the deadline or extended deadline, "the recommended decision of the administrative law judge shall be deemed to be final." Ibid.; see N.J.A.C. 4A:2-2.13(f).

Thus, the APA and the 2009 Act require conflicting procedures to request an extension. Under the APA, a single forty-five-day extension may be awarded only if there is good cause shown, and any subsequent extensions may only be granted on unanimous consent of the parties. N.J.S.A. 52:14B-10(c). By contrast, the 2009 Act grants the Commission discretion to give itself one fifteen-day extension, and any subsequent extensions may be granted by the Chief ALJ upon a showing of good cause. N.J.S.A. 40A:14-204.

"It is a well established precept of statutory construction that when two statutes conflict, the more specific controls over the more general." N.J. Transit Corp. v. Borough of Somerville, 139 N.J. 582, 591 (1995); accord Bergen Cty. PBA Local 134 v. Donovan, 436 N.J. Super. 187, 199 (App. Div. 2014); see Williams v. Am. Auto Logistics, 226 N.J. 117, 126 (2016) (following "the oft-stated principle of statutory construction that a specific statutory declaration prevails over a more general one"). The APA's provisions govern administrative procedures generally. By contrast, the 2009 Act specifically governs disciplinary proceedings when the review involves a law enforcement officer or a firefighter. Thus, in a disciplinary proceeding involving a law enforcement officer or firefighter as defined in the 2009 Act, the specific procedures in the 2009 Act govern over

inconsistent procedures generally applicable under the APA. See N.J. Transit, supra, 139 N.J. at 591; see also NYT Cable TV v. Homestead at Mansfield, 214 N.J. Super. 148, 162 (App. Div. 1986), aff'd, 111 N.J. 21 (1988).

IV.

The Commission did not make its final determination within the forty-five-day timeline set forth in the APA and the 2009 Act. The Commission requested and received two extensions and issued its decision prior to the expiration of the second extension. Because the Commission's second extension was not based on "the unanimous agreement of the parties," it would not have been proper under N.J.S.A. 52:14B-10(c), and the Commission's decision would have been untimely under the APA. However, the Commission's second extension was proper, and its decision was timely, under the 2009 Act.

The ALJ issued his initial decision on November 25, 2014, and the Commission received it that day. Thus, the initial deadline for the Commission to issue its final determination was January 9, 2015. The Commission considered the ALJ's recommendation in a December 17, 2014 meeting. On December 26, 2014, the Commission issued a one-page letter stating that it did not adopt the ALJ's recommendation to modify the penalty to a six-month suspension and that it upheld Restrepo's removal.

11

The letter added: "A decision in this matter will be issued in the near future."

Meanwhile, in a letter dated December 17, 2014, the Commission issued an "Order of Extension" for a fifteen-day extension, until January 24, 2015, to issue its final determination. The order stated there was "good cause" for an extension because additional time was required "to comply with certain aspects of [Capone v. N.J. Racing Comm'n, 358 N.J. Super. 339 (App. Div. 2003).]"[1] The order was countersigned by Laura Sanders, the Acting OAL Director and Chief ALJ, on December 19, 2014.[2]

On January 22, 2015, the Commission issued and served a letter entitled "Order of Extension . . . Second Request,"

---

[1] The Commission apparently believed the extension was governed by the APA. The Commission cited N.J.S.A. 52:14B-10(c), which requires "good cause" and "certification by the [OAL] director" for a first extension. N.J.S.A. 52:14B-10(c).

[2] On the Commission's December 17 letter, Restrepo's counsel is listed as a "CC." The letter also stated there was "unanimous agreement of the parties." However, Restrepo's counsel argues he did not receive or consent to the letter. Indeed, the space for the "Date agency mailed executed order to parties" was left blank. Service of extension requests and extension orders is required under both the APA and the 2009 Act. See N.J.A.C. 1:1-18.8(e); N.J.A.C. 4A:2-2.13(f). Any failure to make service, and any misstatement of consent, was erroneous. Nonetheless, the error was harmless and was not "clearly capable of producing an unjust result," R. 2:10-2, because Restrepo's consent was not required for a first extension under the APA or the 2009 Act and because the first extension was not an abuse of discretion under the 2009 Act.

requesting a second extension to February 8, 2015, to issue its final determination. The request explained there was "good cause" because the Commission's meetings for January 7 and January 21, 2015, were cancelled due to lack of a quorum, so a final decision could not be issued.[3] On February 3, 2015, the Chief ALJ issued and served a letter granting the extension. She found "the quorum problem in January was an unforeseen circumstance." The Commission issued its final decision on February 4, 2015, within the second extension period.

Restrepo argues the Commission's determination at its December 17, 2014 meeting, evidenced in its December 26, 2014 letter, was not the final administrative determination required by N.J.S.A. 40A:14-204. We agree.

The Commission's December 26 determination contained no factual findings or conclusions of law and instead merely stated it rejected the ALJ's recommendation on the penalty. We have repeatedly warned administrative agencies that

---

[3] The Commission again cited the APA's N.J.S.A. 52:14B-10(c), which requires "the unanimous agreement of the parties" for a second extension. The Commission claimed "consent of the parties is not necessary for this extension request" because "[a]t its meeting on December 17, 2014, the [Commission] made a final determination within the required 45 day time frame" and gave notice of that determination on December 26, 2014. As we explain in text, the Commission's actions in December 2014 were inadequate to constitute a final determination. Thus, the second extension required but lacked the unanimous consent required under the APA.

> simply notifying a party of its rejection of an ALJ's initial decision, followed many months later by issuance of a final decision containing findings of fact and conclusions of law, violates N.J.S.A. 52:14B-10(c) and (d) and could result in the ALJ's initial decision being "transformed into the agency's final decision."
>
> [Capone, supra, 358 N.J. Super. at 350 (quoting N.J. Racing Comm'n v. Silverman, 303 N.J. Super. 293, 304 (App. Div. 1997)).]

Nonetheless, "[t]he lack of findings of fact and conclusions of law in an agency's [summary letter preceding its final decision] does not automatically require the ALJ's initial decision to be 'deemed approved.'" Id. at 341. The Commission recognized its December 26 letter was inadequate and granted itself a timely initial fifteen-day extension to comply with Capone. We cannot say this initial extension was an abuse of discretion.

Furthermore, we have indicated an agency which has issued an inadequate summary order "should have applied to the Office of Administrative Law for an additional extension . . . until the issuance of its final decision." Cavalieri v. Bd. of Trs. of Pub. Emps. Ret. Sys., 368 N.J. Super. 527, 540 (App. Div. 2004); see Penpac, Inc. v. Passaic Cty. Utils. Auth., 367 N.J. Super. 487, 499 (App. Div.), certif. denied, 180 N.J. 457 (2004). Here, the Commission sought and received from the Chief

ALJ a second fifteen-day extension and filed its final determination within that extension period.

The Commission's lack of quorum constituted good cause for an extension to render a final determination. Three of the Commission's five authorized members "shall constitute a quorum." N.J.S.A. 11A:2-3. A quorum is necessary for the Commission to render a disciplinary decision. See King v. N.J. Racing Comm'n, 103 N.J. 412, 418 (1986) (setting aside the Racing Commission's rejection of the ALJ's recommendation due to the lack of a "legal quorum"). In King, our Supreme Court held that "the deemed-approved provision of N.J.S.A. 52:14B-10(c) should not be invoked" where the Racing Commission tried to act but lacked a quorum and that "the agency should be permitted to take remedial steps to cure the deficiency and to issue a decision." Id. at 421, 423. Therefore, the deemed-approved provision should not be applied where the agency, rather than making a decision without a quorum, sought a brief extension to cure the quorum deficiency and issued a decision within that extension.

Our Supreme Court in King recognized "a statutory 'automatic approval mechanism should be applied with caution.'" Id. at 422. The Court "require[s] an agency display of 'bad faith,' 'inexcusable negligence,' 'gross indifference,' or a

complete failure to respond to an ALJ's Initial Decision within the forty-five day period before that 'decision should be transformed into the agency's final decision.'" <u>Matturri v. Bd. of Trs. of the Judicial Ret. Sys.</u>, 173 <u>N.J.</u> 368, 379-80 (2002) (quoting <u>King</u>, <u>supra</u>, 103 <u>N.J.</u> at 421); <u>see also</u> <u>Klusaritz v. Cape May County</u>, 387 <u>N.J. Super.</u> 305, 314 (App. Div. 2006), <u>certif. denied</u>, 191 <u>N.J.</u> 318 (2007). Thus, the Chief ALJ properly found "[t]his is not an instance of agency inattention, or failure to pursue diligently its obligation to make its decisions."

Restrepo argues the Commission's final decision was untimely due to "bad faith, inexcusable negligence, or gross indifference," and, therefore, the ALJ's recommendation of a six-month suspension should be deemed the final administrative determination. <u>King</u>, <u>supra</u>, 103 <u>N.J.</u> at 421. He argues a "lack of quorum" is not sufficient to show good cause for an extension. We disagree.

Restrepo alleges that the Commission has been two commissioners short since 2011, that it could not obtain a quorum in January 2014 either, and that it would be unfair if it was unable to obtain a full quorum "if one of these members is on vacation." However, Restrepo cites no proof for the serious allegation that the Commission intentionally cancelled its

January meetings so its members could vacation. In any event, the Commission's issuance of its December 26 letter, and its obtaining of a quorum and issuance of Restrepo's final determination by February 4, belie Restrepo's claim of bad faith, inexcusable negligence, gross indifference, or a complete failure to respond in the initial forty-five-day period. See Cavalieri, supra, 368 N.J. Super. at 539-40 (upholding the Pension Board's untimely ruling because it "signaled its intentions to reject the initial decision . . . and issued its final decision reasonably promptly thereafter"); cf. Silverman, supra, 303 N.J. Super. at 303 (admonishing the Racing Commission because it "delayed nine months until it eventually issued its decision" without seeking any extensions). Accordingly, the extensions were proper, and the Commission's decision was timely.

V.

Restrepo next argues the decision to uphold his removal was arbitrary and capricious because the Commission did not follow the principles of progressive discipline.

Courts "'accord substantial deference to an agency head's choice of remedy or sanction.'" In re Herrmann, 192 N.J. 19, 34-35 (2007) (citations omitted). "A reviewing court should alter a sanction imposed by an administrative agency only 'when

necessary to bring the agency's action into conformity with its delegated authority. The Court has no power to act independently as an administrative tribunal or to substitute its judgment for that of the agency.'" Id. at 28 (citation omitted).

Progressive discipline was first endorsed by our Supreme Court in West New York v. Bock, 38 N.J. 500, 523-24 (1962). Progressive discipline has been used in two ways. "First, principles of progressive discipline can support the imposition of a more severe penalty for a public employee who engages in habitual misconduct." Herrmann, supra, 192 N.J. at 30. "The second use to which the principle of progressive discipline has been put is to mitigate the penalty for a current offense" where, as here, an employee has little or no record of misconduct. Id. at 32.

However, neither this court nor our Supreme Court "regard[] the theory of progressive discipline as a fixed and immutable rule to be followed without question." Carter, supra, 191 N.J. at 484. In particular, "progressive discipline is not a necessary consideration when reviewing an agency head's choice of penalty when the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position." Herrmann, supra, 192 N.J. at

33. Moreover, "[i]n matters involving discipline of police and corrections officers, public safety concerns may also bear upon the propriety of the dismissal sanction." Carter, supra, 191 N.J. at 485.

Here, Restrepo was away from his post for approximately sixty-eight minutes and notified no one at the Prison he would be gone or where he was going. He did so in direct violation of the Post Orders and the DOC Rules, which forbid an officer from leaving his post without calling for relief. Further, Restrepo left an entire housing wing containing scores of prisoners unobserved for over an hour, and the prisoners took advantage of his absence to start a fight that engendered another fight. Correctional facilities, if not run properly, "have a capacity to become 'tinderboxes.'" Bowden v. Bayside State Prison, 268 N.J. Super. 301, 306 (App. Div. 1993), certif. denied, 135 N.J. 469 (1994). That potential was certainly displayed here. Restrepo's misconduct put lives in danger and could have been easily avoided by making a radio call to request relief from another officer. The DOC determined Restrepo's actions to be so egregious and severe that they warranted removal. "The appraisal of the seriousness of [the officer's] offense and degree to which such offenses subvert discipline . . . are

matters peculiarly within the expertise of the corrections officials." Ibid.

The Commission agreed with the DOC that Restrepo's conduct was egregious, finding his absence for "over an hour created an extreme safety issue for other inmates and for correctional personnel."

The Commission has de novo review over public employee disciplinary matters. Henry, supra, 81 N.J. at 579; see N.J.S.A. 11A:2-19. Courts on the other hand "have a limited role in reviewing a decision of an administrative agency" and will overturn the decision only if it is "arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Henry, supra, 81 N.J. at 579-80 (applying that standard to the Commission's decision regarding the penalty for a corrections officer who fell asleep). Ultimately, the "question for the courts is 'whether such punishment is "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness."'" Carter, supra, 191 N.J. at 484 (citation omitted). Here, the Commission's decision was supported by credible evidence and was not arbitrary, capricious, or unreasonable. Removal does not shock our sense of fairness.

Restrepo cites DOC Human Resources Bulletin 84-17, but it states removal is a potential disciplinary measure for a first offense for leaving the assigned work area, or other neglect of duty, if it creates a danger to persons or property. Therefore, removal, though not automatic, is warranted where the conduct is egregious, as it is here.

Restrepo's remaining arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION