**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5617-15T1

IN THE MATTER OF PETER
FARLOW, CAMDEN COUNTY
CORRECTIONAL FACILITY.

_____

Argued December 5, 2018 – Decided January 24, 2019

Before Judges Reisner and Mawla.

On appeal from the New Jersey Civil Service Commission, Docket No. 2015-2246.

Stuart J. Alterman argued the cause for appellant Peter Farlow (Alterman & Associates, LLC, attorneys; Stuart J. Alterman, of counsel and on the brief; Arthur J. Murray, on the brief).

Howard L. Goldberg, First Assistant County Counsel, argued the cause for respondent Camden County Correctional Facility (Christopher A. Orlando, County Counsel, attorney; Howard L. Goldberg, on the brief).

Respondent Civil Service Commission has not filed a brief.[1]

_____

[1] The Commission filed a letter stating that it took no position on the merits of the appeal.

PER CURIAM

Peter Farlow appeals from a final administrative action of the Civil Service Commission (Commission), approving his termination from employment by the Camden County Correctional Facility (CCCF or employer) for conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6), discrimination that affects equal employment opportunity, including sexual harassment, N.J.A.C. 4A:2-2.3(a)(9), and other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12). After a lengthy administrative hearing, an administrative law judge (ALJ) credited testimony from the employer's witnesses. Although Farlow denied all of the charges, the ALJ found that Farlow's testimony was not credible. The ALJ found that Farlow committed the misconduct with which he was charged, and he recommended termination from employment as the appropriate penalty. Lacking a quorum, the Commission could not vote on whether to adopt or reject the initial decision, and as a result, the decision was deemed adopted. See N.J.S.A. 52:14B-10(c); In re Hendrickson, 235 N.J. 145, 153-54 (2018).

On this appeal, Farlow presents the following points of argument:

> I.   EVEN ASSUMING ARGUENDO THE BONA FIDES OF THE SUSTAINED DISCIPLINE AGAINST FARLOW, REMOVAL, AS FOUND BY THE ALJ, WAS INAPPROPRIATE UNDER THE

CIRCUMSTANCES AND WAS AN AFFRONT TO NEW JERSEY'S LONG HELD JURISPRUDENCE OF PROGRESSIVE DISCIPLINE.

II. THE ALJ ERRED AS A MATTER OF LAW IN DETERMINING THAT CCCF WAS NOT REQUIRED TO ADOPT THE NEW JERSEY ATTORNEY GENERAL GUIDELINES ON INTERNAL POLICIES AND PROCEDURES.

III. THE ALJ ERRED AS A MATTER OF LAW IN FINDING THE SPECIFICATIONS LEVIED BY CCCF AGAINST FARLOW WERE ADEQUATE.

IV. THE ALJ ERRED AS A MATTER OF LAW IN FAILING TO DISMISS THE DISCIPLINARY CHARGES LEVIED AGAINST FARLOW WHEN IT WAS ESTABLISHED THAT CCCF HAD NOT ADOPTED THE NEW JERSEY ATTORNEY GENERAL GUIDELINES ON INTERNAL AFFAIRS POLICIES AND PROCEDURES COUPLED WITH THE LACK OF DETAIL IN CCCF'S PURPORTED SPECIFICATIONS.

V. THE ALJ ERRED AS A MATTER OF LAW BY DENYING DISMISSAL OF THE CHARGES LEVIED AGAINST FARLOW BASED UPON CCCF'S BLATANT VIOLATION OF THE 45-DAY RULE.

VI. THE ALJ ERRED AS A MATTER OF LAW IN CONSIDERING TWO ALLEGED CLAIMS OF HARASSMENT AND HOSTILE WORK ENVIRONMENT (ALJ FINDING OF FACT #8 AND #13) BASED ON HEARSAY.

VII. THE ALJ DENIED FARLOW A FUNDAMENTAL FAIRNESS BY NOT CONSIDERING ANY OF THE EXHIBITS HE

A-5617-15T1

MOVED INTO EVIDENCE IN RENDERING HIS INITIAL DECISION, WHICH BECAME THE FINAL DECISION.

VIII. THE ALJ'S FACTUAL FINDINGS ARE NOT SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE.

We find no merit in any of those arguments, and we affirm.

We begin by addressing Farlow's first and last points of argument. After reviewing the record, we find no basis to second-guess the ALJ's evaluation of witness credibility, and we conclude that his factual findings are supported by substantial credible evidence. See Lavezzi v. State, 219 N.J. 163, 171-72 (2014). The hearing testimony is outlined at length in the initial decision and need not be repeated in detail here. For purposes of this appeal, a summary of the ALJ's factual findings will suffice.

Between November 2012 and December 2013, Farlow, a corrections lieutenant, made various inappropriate comments to a subordinate, a female officer named D.H.[2] He made sexual references to her anatomy, subjected her to crude insults, and made a comment about her sexual relationship with her

---

[2] The employees' names are not germane to our decision, and we use initials to protect their privacy.

husband.  D.H. did not file complaints about these comments, because Farlow led her to believe that he had a close relationship with one of the deputy wardens.

Between February 2013 and February 2014, Farlow had several inappropriate interactions with another female officer, S.R.  According to S.R., Farlow touched her hair without her consent and made comments to S.R.'s co-workers about her body.  Those comments referred to a photograph, from her personal Facebook page, of S.R. wearing a bathing suit.  Farlow also made demeaning remarks about other officers in front of S.R., referring to them as "pieces of shit."  S.R., who was a probationary employee at the time, did not file complaints about this behavior because she was afraid that it would negatively affect her prospects for continued employment with CCCF.

Between March 2013 and March 2014, Farlow subjected a female officer, J.D., to descriptions of his sex life, including his marital infidelities, and asked her if women liked men who performed oral sex.  During this time, Farlow also referred to other officers as "pieces of shit" in front of J.D., and he told other officers that J.D. "slept with most of the guys in the department."  J.D., who was also a probationary employee, did not file complaints, fearing that she would not be retained after her probationary year.[3]

---

[3] Witnesses also referred to the probationary year as the working test period.

A-5617-15T1

Between March 2012 and March 2014, Farlow made a litany of inappropriate comments to A.C., a female officer. He made comments about S.R.'s bathing suit photo, stated that J.D. was the "biggest whore in the jail," and said that J.D. had performed oral sex on another officer. Farlow also told A.C. that he had received oral sex from a woman in an elevator during a sports tournament. Farlow commented to A.C. that a male officer, W.R., "look[ed] gay" because of his physical appearance. A.C. did not file complaints about these incidents due to fear of retaliation.

According to W.R., Farlow yelled at him in front of inmates and demeaned him. Farlow called W.R. a "piece of shit." On one occasion, Farlow entered an office occupied by W.R. and said he "smelled shit." Like the other officers, W.R. did not file a complaint due to fear that it would affect his employment status.

On July 25, 2014, in the presence of J.V., a male sergeant, Farlow told a female officer, A.B., that Farlow would like to see J.V. "push you up against the wall and kiss the back of your neck." Farlow told A.B. not to tell her husband, who was also a corrections officer.

Farlow received training on sexual harassment, diversity, ethics, and respect in the work place in 2013 and 2014. Previously, Farlow had received

6

training on hostile work environments, harassment, quid pro quo harassment, and sexual harassment policy and procedures.

The ALJ determined that Farlow's conduct "revealed a complete disregard of the profession[al] manner in which a superior officer should comport his actions. His actions sexually harassed the women assigned to his shift. . . . [His actions left] the CCCF subject to exposure to claims based on a hostile work place or sexual harassment." The ALJ concluded that the CCCF had met its burden of proof and termination of employment was an appropriate penalty.

The ALJ's factual findings are amply supported by the record. In light of those findings, we find no legal error in the decision that termination was the appropriate penalty. Our standard of review is whether the penalty "shocks one's sense of fairness." Hendrickson, 235 N.J. at 150. We conclude it does not.

Farlow engaged in a pattern of unprofessional and demeaning behavior toward his subordinates, most of whom were probationary employees who felt powerless to complain about his conduct. Moreover, his prior disciplinary record reflected four violations for conduct unbecoming a public employee between 2006 and 2009. Each of those violations resulted in a suspension ranging from two days to ninety days. Two of the violations involved unprofessional comments, including an instance where Farlow was disciplined

7

for telling a female co-worker that she had "a flabby ass." Farlow's disciplinary history gave him ample notice that future incidents of inappropriate and unprofessional behavior would be the basis for further disciplinary action, but he continued to engage in that type of behavior. Farlow's conduct was particularly egregious in light of his position as the disciplinary lieutenant on his shift at CCCF. His misconduct was also severe, because it potentially exposed CCCF to hostile work environment and sexual harassment claims.

While we find that the employer followed principles of progressive discipline here, termination would have been appropriate in any case. "[N]either this court nor our Supreme Court 'regard[] the theory of progressive discipline as a fixed and immutable rule to be followed without question.'" In re Restrepo, 449 N.J. Super. 409, 425 (App. Div.) (alteration in original) (quoting In re Carter, 191 N.J. 474, 484 (2007)), certif. denied, 230 N.J. 574 (2017). "[P]rogressive discipline is not a necessary consideration when . . . the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest." In re Herrmann, 192 N.J. 19, 33 (2007). Those considerations apply here.

Farlow's remaining appellate arguments are without sufficient merit to warrant discussion beyond the following brief comments. See R. 2:11-3(e)(1)(E).

Contrary to Farlow's argument, the charges were not untimely under N.J.S.A. 30:8-18.2, which requires that charges be filed no later than forty-five days after the employer "obtain[s] sufficient information" on which to base the complaint. As a matter of fairness and good management practice, the warden ordered a thorough internal investigation before deciding whether disciplinary charges were warranted. The charges were filed within forty-five days of the date on which the warden received the internal investigation report.

CCCF was not required to follow the Attorney General's (AG's) guidelines for law enforcement agencies conducting internal affairs investigations. See N.J.S.A. 40A:14-181 (mandanting that "[e]very law enforcement agency" adopt guidelines consistent with the AG's guidelines). Those guidelines do not apply to corrections facilities. Office of the N.J. Attorney Gen., Div. of Criminal Justice, Internal Affairs Policy & Procedures 5 (last updated Nov. 2017), https://www.nj.gov/oag/dcj/agguide/internalaffairs2000v1_2.pdf ("[C]ounty correctional agencies . . . are under no obligation to implement the provisions of

this policy.").[4] Moreover, Farlow had notice of the charges against him well in advance of the hearing before the ALJ. Prior to the hearing, Farlow was provided with discovery, including the internal investigative report and the written statements of the witnesses interviewed during the investigation. In fact, he admitted that he was given copies of the witness statements prior to his departmental hearing at CCCF.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Farlow's counsel spent extensive amounts of time cross-examining witnesses about the procedures CCCF followed in conducting the internal investigation. As a result, a relatively straightforward case involving employee misconduct occupied fifteen days of hearings.

A-5617-15T1