**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4086-17T3

IN THE MATTER OF JOSEPH
MAGLIONE, EWING TOWNSHIP
POLICE DEPARTMENT.

_____

Argued October 3, 2019 – Decided October 24, 2019

Before Judges Fuentes, Mayer and Enright.

On appeal from the New Jersey Civil Service Commission, Docket No. 2018-1233.

Donald C. Barbati argued the cause for appellant Joseph Maglione (Crivelli & Barbati, LLC, attorneys; Donald C. Barbati and Frank Michael Crivelli, on the briefs).

Susan Lynn Swatski argued the cause for respondent Ewing Township Police Department (Hill Wallack, LLP, attorneys; Susan Lynn Swatski, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Civil Service Commission (Dominic Larue Giova, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Joseph Maglione appeals from a final decision of the Civil Service Commission (Commission), upholding his removal from employment with the Ewing Township Police Department (Department) for numerous violations of Departmental Rules and Regulations regarding a high-risk missing child investigation. We affirm.

After a lengthy hearing, an administrative law judge (ALJ) accepted the testimony from the Department's witnesses as credible. On the other hand, the ALJ concluded Maglione's testimony, denying any violations of the Departmental Rules and Regulations, was not credible. The ALJ found Maglione's

> actions or lack thereof, if not intentional, were grossly negligent in the handling of a high-risk missing child. This was compounded by his lack of candor in his [Internal Affairs Department] interview and calls into question his fitness to be a supervising officer. Such conduct places not only the public[,] but the Department at risk.

The ALJ affirmed the Department's termination of Maglione's employment.

The hearing testimony provided by the witnesses is recited at length in the ALJ's initial decision. We provide a summary of the ALJ's factual findings.

On May 20, 2017, the Department received a telephone call, reporting a missing eleven-year old child. Based on the child's age, he was deemed a "high-

risk" missing person.  Investigations of high-risk missing children require officers to follow protocols set forth in the Department's Guidelines and the Attorney General's Directives.  Officers are required to search inside and outside the residence of the missing child; treat the place where the child was last seen as a crime scene; establish a command post; notify supervisors in the chain of command; contact the on-call detective; notify the county's Child Abduction Response Team (CART); and contact the K-9 unit in the Department.

Lieutenant Maglione, the on-duty supervisor on the date of the incident, and Officer Paul Dorio responded to the missing child call.  Both officers spoke to the missing child's parents.  However, neither officer searched the interior or exterior of the child's home and did not establish a crime scene or command post at the residence.  Nor did the officers issue a "Be on the Look Out" (BOLO) order to notify adjacent municipalities of the missing child.

Maglione told Dorio to call the Mercer County Prosecutor's Office and the officer who worked in the child's school.  Maglione did not instruct Dorio to contact CART to ensure their involvement in the missing child investigation. Nor did Maglione call his superiors regarding the child's disappearance.

The next day, the Department first learned the child was missing.  The on-call detective contacted CART.  The staff at CART said they were not contacted

the prior evening by either Maglione or Dorio. The on-call detective called the child's school seeking to contact the missing child's friends. Within hours thereafter, the juvenile was found unharmed.

The Department initiated an internal affairs investigation into the events related to the child's disappearance. The investigation concluded Maglione edited Dorio's incident report several times and determined significant information was missing from Dorio's report despite Maglione's approval of the document. The internal affairs investigator found Maglione had been untruthful many times during the course of the Department's investigation.

The ALJ upheld the Department's disciplinary charges in an April 3, 2018 Initial Decision. On May 4, 2018, the Commission accepted and adopted the ALJ's thorough and comprehensive factual findings and legal conclusions.

Maglione presents the following arguments on appeal:

> I. THE CIVIL SERVICE COMMISSION ERRED IN ACCEPTING AND ADOPTING THE INITIAL DECISION OF THE ALJ. AS SUCH, THE COMMISSION'S DECISION MUST BE REVERSED.
>
> II. THE ALJ'S CREDIBILITY DETERMINATIONS WERE ERRONEOUS AND INHERENTLY INCONSISTENT. GIVEN THE DETERMINATIONS SERVED AS THE UNDERPINNING FOR THE INITIAL DECISION, THE INITIAL DECISION SHOULD HAVE BEEN REJECTED BY THE COMMISSION.

4

III.   THE ALJ ERRED IN DETERMINING THE DEPARTMENT MET ITS BURDEN OF PROOF TO SUSTAIN THE DISCIPLINARY CHARGES LODGED AGAINST MAGLIONE.  THIS FURTHER SUPPORTED REVERSAL OF THE INITIAL DECISION.

1.  The ALJ failed to recognize the Department failed to prove Maglione should be responsible for Officer Dorio's deficiencies in contacting CART and/or the On-Call Detective.

2.  The ALJ failed to recognize the Department failed to prove Maglione should be responsible for Officer Dorio's deficiencies in the search of the missing child's residence.

3.  The Department did not establish Maglione had an imperative obligation to contact the On-Call Detective and establish a command post and/or crime scene. Moreover, the Department failed to establish Maglione failed to send out the required BOLO message. As such, the ALJ's determinations to sustain these charges should have been reversed.

4.  The ALJ erroneously determined the Department established Maglione was untruthful.

IV.   THE ALJ AND COMMISSION ERRED IN AFFIRMING MAGLIONE'S REMOVAL FROM EMPLOYMENT.  SUCH A PENALTY DEFIES THE PRINCIPLES OF PROGRESSIVE DISCIPLINE AND IS "SHOCKING TO ONE'S SENSE OF FAIRNESS."

"An appellate court affords a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities."

A-4086-17T3

Lavezzi v. State, 219 N.J. 163, 171-72 (2014) (quoting City of Newark v. Nat. Res. Council, Dep't of Envtl. Prot., 82 N.J. 530, 539 (1980)). We will not overturn an agency's decision "in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence . . . ." Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963).

We give "due regard to the opportunity of the one who heard the witnesses to judge their credibility." Logan v. Bd. of Review, 299 N.J. Super. 346, 348 (App. Div. 1997) (citing Jackson v. Concord Co., 54 N.J. 113, 117 (1969)). We will not disturb an ALJ's credibility findings unless they were "arbitrary or not based on sufficient credible evidence in the record as a whole." Cavalieri v. Bd. of Trs. of PERS, 368 N.J. Super. 527, 537 (App. Div. 2004). After reviewing the record, we find no basis to second-guess the ALJ's evaluation of witness credibility.

We are further satisfied that the ALJ's findings are amply supported by the credible testimony and documentary evidence adduced during the hearing. On the date of the juvenile's disappearance, Maglione's actions, or lack thereof, violated multiple protocols issued by the Department, warranting imposition of a severe penalty.

We next consider Maglione's argument that removal from office was an inappropriate penalty and progressive discipline should have been imposed. Our standard of review is whether the penalty "shocks one's sense of fairness." In re Hendrickson, 235 N.J. 145, 150 (2018). "[N]either this court nor our Supreme Court 'regard[] the theory of progressive discipline as a fixed and immutable rule to be followed without question.'" In re Restrepo, 449 N.J. Super. 409, 425 (App. Div. 2017) (second alteration in original) (quoting In re Carter, 191 N.J. 474, 484 (2007)). "[P]rogressive discipline is not a necessary consideration when . . . the misconduct is severe, when it is unbecoming to the employee's position or renders the employee unsuitable for continuation in the position, or when application of the principle would be contrary to the public interest." In re Herrmann, 192 N.J. 19, 33 (2007). Even a single incident can be egregious enough to warrant removal without reliance on progressive-discipline policies. Ibid.

Several of these considerations are applicable here. In deciding to terminate Maglione, the ALJ and the Commission emphasized his numerous violations of the Department's Rules and Regulations, lack of veracity throughout the internal affairs investigation and during the administrative hearing, and refusal to take responsibility for his actions. The Commission

A-4086-17T3

concluded that the substantial evidence in the record regarding Maglione's failure to follow rules, procedures, and guidelines in searching for the high-risk missing child warranted his termination. There is no legal or factual basis to disturb this decision. Moreover, Maglione's absence of judgment demonstrated gross negligence and lack of fitness to continue working in the Department. The public's interest would not be served by implementing progressive discipline under these circumstances.

Having reviewed the ALJ's detailed findings, we discern no legal error in the ALJ's decision to terminate Maglione's employment. Termination was not disproportionate or unreasonable under the circumstances, and does not shock our sense of fairness.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4086-17T3