**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3623-19

IN THE MATTER OF
JOSEPH DOWNAR,
THE CITY OF NEWARK
FIRE DEPARTMENT.

_____

Argued October 28, 2021 – Decided November 16, 2021

Before Judges Whipple, Geiger and Susswein.

On appeal from the New Jersey Civil Service Commission, Docket No. 2018-2876.

Frank C. Cioffi argued the cause for appellant Joseph Downar (Sciarra & Catrambone, LLC, attorneys; Frank C. Cioffi, of counsel and on the briefs).

John J. Zidziunas argued the cause for respondent City of Newark Fire Department, (John J. Zidziunas & Associates, LLC, attorneys; John J. Zidziunas, of counsel and on the brief; Jeffrey V. Fucci, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent New Jersey Civil Service Commission (Eric A. Reid, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Petitioner Joseph Downar appeals from the April 17, 2020 final administrative action of the Civil Service Commission (Commission) that accepted and adopted the findings of fact and conclusions articulated in an Administrative Law Judge's initial decision, and affirmed Downar's removal on charges, effective December 8, 2018. For the following reasons, we affirm.

We derive the facts, which are largely undisputed, from the record. Downar, was hired as a firefighter by the City of Newark Fire Department (Department) in June 2013. His probationary period was uneventful. During his first three years as a firefighter, Downar incurred no disciplinary infractions and received positive performance reviews.

On July 30, 2016, Downar and Michael Avila were patrons of the Darby Road Restaurant in Scotch Plains. They did not know each other. Downar was intoxicated. At one point a conversation regarding sports became heated. When Downar became loud, Avila decided to end the conversation and told Downar "let's agree to disagree and I'm going to sit here and finish my drink." Downar then punched Avila on the side of his face causing his head to hit the wall. Avila suffered a zygomatic arch fracture (fractured cheekbone), a laceration on his forehead, and a concussion. Avila was taken to a hospital.

There is no evidence that Downar announced that he was a Newark firefighter during the incident.

On January 4, 2017, police arrested Downar for third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7). Downar was indicted for that charge on June 13, 2017. He pled guilty to third-degree aggravated assault on October 2, 2017 and was sentenced on December 8, 2017 to a three-year probationary term, conditioned upon serving a 364-day jail term, undergoing a substance abuse evaluation, and following all treatment recommendations.

Downar did not report the incident, his arrest, the assault charge, the indictment, his conviction, his sentence, or other aspects of the criminal prosecution to the Department, which had no independent knowledge of the incident or its consequences until December 12, 2017, the day he began serving his jail term.

After Downar failed to report to work that day, a union representative advised the Public Safety Director's Office that Downar was incarcerated and would not be reporting for work the next day. The representative related that he was just informed of the matter and would send the related paperwork by fax. After reviewing the criminal complaint, Public Safety Director Anthony F. Ambrose directed Assistant Public Safety Director Raul Malave to suspend

3

Downar. The Department also conducted an internal affairs (IA) investigation that confirmed what had happened. A preliminary notice of disciplinary action (PNDA) was issued on December 12, 2017. The PNDA listed the following charges: inability to perform duties, N.J.A.C. 4A:2-2.3(a)(3); conviction of a crime, N.J.A.C. 4A:2-2.3(a)(5); conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); and other sufficient cause (violation of Department rules and regulations), N.J.A.C. 4A:2-2.3(a)(12). Downar was suspended without pay effective December 8, 2017. The Department sought his removal.

A Department letter appended to the PNDA recited portions of Articles 6, 11, 23, 58, and 59 of the Department's Rules and Regulations. Most pertinent here, Article 6, Paragraph 1 states that members shall not violate their oath of office. Article 23, Paragraph 1, states: "Members shall be held liable for any disorderly conduct or violation of any law, whether on or off duty." Paragraph 2 provides: "Members shall not engage in any altercations, nor be guilty of improper, indecent or immoral conduct. Members at all times shall be civil and orderly in their conduct and refrain from doing anything which may bring discredit to themselves or the Department." Article 58, Paragraph 1 states: "Members shall not commit any act nor shall they be guilty of any omission that constitutes neglect of duty." In addition, Article 1,

Paragraph 4 requires members "to promptly and implicitly conform to all Rules and Regulations, Orders, Executive Orders, General Orders, Notices and Directives governing the Fire Department."

A disciplinary hearing was held on March 15, 2018.  Downar pled not guilty to the charges.  A March 16, 2018 Final Notice of Disciplinary Action (FNDA) sustained each of the charges and removed Downar effective December 8, 2018.  The FNDA recited Article 58, Paragraph 1 and Article 59, Paragraphs 1 and 2 and noted that Downar was found guilty of third-degree aggravated assault and ordered to serve a 364-day jail term, but failed to notify the Department of his arrest, indictment, and incarceration.

Downar was paroled on March 14, 2018, after serving 120 days in jail.  His parole and probation were uneventful, and his probation was ended early.  He is now employed as a union painter.  Downar acknowledges that he attended Alcoholics Anonymous meetings on a voluntary basis but continues to drink socially.

Downar and the Prosecutor's Office filed a joint motion under Rule 3:21-10(b)(3) to change his conviction to fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(3).  On April 16, 2018, the unopposed motion was granted, and an amended judgment of conviction was entered.

Downar appealed his removal. The case was transferred to the Office of Administrative Law as a contested case and assigned to an Administrative Law Judge for hearing. The hearing was conducted in October 2019, with Downar and three witnesses testifying.

Assistant Public Safety Director Raul Malave testified for the fire department. He recounted when and how the Department first learned of the incident and Downar's subsequent arrest, prosecution, conviction, sentence, and inability to report to work due to incarceration. Malave explained the Department's policy that was adopted on January 4, 2017, which required firefighters to report any interaction with law enforcement or the courts, including all court dates. He also testified that even though the charge was ultimately a fourth-degree offense, it did not change his mind about the discipline Downar should receive as it was still a violent crime. Malave also testified that he believed Downar was terminated because his assault charge showed violent tendencies that were alarming as someone who had to deal with the public. He explained that firefighters are responsible for their conduct both on and off duty.

Michael Petrone, a fellow Newark firefighter who has been on the force for twenty-eight years, testified as a character witness for Downar. He

6

testified there are other firefighters on the force that have had criminal charges against them but continued working, including charges for theft and domestic abuse.

James Pierson, a retired police captain, also testified on behalf of Downar. He stated that although there is an obligation to report interactions with law enforcement, interactions are often not reported as required. He believed firefighters on occasion wait to see if criminal charges resolve in their favor. He recounted that he had been charged in the past with aggravated assault that was downgraded to simple assault and waited to report it until he knew what the outcome of the charges would be.

Downar testified on his own behalf, noting his lack of prior misconduct, cooperation with the police on the date of the incident, and that he was unaware he had to report the incident to his superiors. On the advice of counsel, he turned himself in to police because the charge was being upgraded to aggravated assault. He used personal and vacation time for court appearances. He testified that he was sentenced to three years of probation, but supervision was terminated after twenty months.

On February 28, 2020, the ALJ issued a twelve-page initial decision that affirmed Downar's removal and dismissed his appeal. The ALJ found that the

7

Department proved by a preponderance of the evidence that Downar was guilty of the charges set forth in the FNDA: conduct unbecoming a public employee, inability to perform duties, conviction of a crime, and violation of departmental rules and regulations. She specifically found that Downar: (a) "engaged in conduct unbecoming a public employee by engaging in a fight that result[ed] in serious injury to the victim and a conviction of a third-degree crime"; (b) was "guilty of neglect of his duties as a fireman in violation of N.J.S.A. 4A:2-2.3(a)(7)," because Downar's incarceration "prevented him from performing his duties" for 120 days; (c) was convicted of aggravated assault; and (d) violated departmental rules and regulations by failing to report his criminal charges to his superiors.

The ALJ did not find Downar's testimony that he was unaware that he was obligated to report his criminal charges to the Department to be credible. Nor was she persuaded by the testimony of Downar's witnesses.

As to whether the penalty of removal was appropriate, the ALJ found that Downar's conduct warranted termination. She explained that firefighters were "a special kind of public employee" that are "subject to a higher standard of conduct and responsibility than is required of most other public employees." She noted that "[t]he Commission has long recognized that fire fighters, all of

8

which are part of a paramilitary organization, hold very unique positions, and any disregard for the law is unacceptable."

Downar filed exceptions to the initial decision. On April 17, 2020, the Commission issued a final administrative action that accepted and adopted the ALJ's findings of fact and conclusions. The Commission determined that Downar's removal, effective December 8, 2018, was justified. This appeal followed.

Downar raises the following points for our consideration:

POINT I

THE DECISION OF THE CIVIL SERVICE COMMISSION TO UPHOLD THE ADMINISTRATIVE LAW JUDGE[']S DECISION TO REMOVE PETITIONER JOSEPH DOWNAR FROM HIS POSITION AS FIREFIGHTER WITH THE CITY OF NEWARK WAS ARBITRARY AND CAPRICIOUS AND NOT SUPPORTED BY THE SUBSTANTIAL EVIDENCE OF THE RECORD.

A. Standard of Review.

B. City's Policy.

POINT II

IN THE ALTERNATIVE, THE COURT SHOULD REINSTATE PETITIONER JOSEPH DOWNAR TO HIS POSITION WITH THE CITY OF NEWARK AS THE CIVIL SERVICE COMMISSION'S DECISION TO REMOVE PETITIONER JOSEPH DOWNAR

9                                                          A-3623-19

FROM HIS POSITION WITH THE CITY IS DISPROPORTIONATE TO THE OFFENSE AS THE OFFENSE OCCURRED IN AN OFF-DUTY SETTING AND DID NOT [A]FFECT HIS ABILITY TO PERFORM HIS DUTIES AND RESPONSIBILITIES AS A FIREFIGHTER WITH THE CITY OF NEWARK.

Our scope of review of an administrative agency's final determination is limited. In re Herrmann, 192 N.J. 19, 27 (2007). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Id. at 27-28. The burden of proving a decision was arbitrary, capricious, or unreasonable is on the party challenging the agency action. Lavezzi v. State, 219 N.J. 163, 171 (2014) (citing In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013)).

When reviewing an agency decision, we examine:

(1) whether the agency's action violates express or implied legislative policies;

(2) whether the record contains substantial evidence to support the findings on which the agency based its action; and

(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

10

> Allstars Auto Grp., Inc. v. N.J. Motor Vehicle
> Comm'n, 234 N.J. 150, 157 (2018) (quoting In re
> Stallworth, 208 N.J. 182, 194 (2011)).

Where an agency's decision satisfies these criteria, we accord substantial deference to the agency's fact-finding and legal conclusions, recognizing "the agency's 'expertise and superior knowledge of a particular field.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

Firefighters perform a unique, essential municipal function, protecting people and property from the danger and destruction of fires and other emergencies. "Firefighters are not only entrusted with the duty to fight fires; they must also be able to work with the general public and other municipal employees, especially police officers . . . ." Karins v. City of Atl. City, 152 N.J. 532, 552 (1998). Firefighters "must also display a certain level of discipline and an ability to work well within the community." Id. at 557. "Thus, a municipality has a significant interest in the off-duty conduct of its firefighters . . . ." Id. at 552. As explained by the Court in Karins:

> Conduct that weakens the public's trust tends to destroy the public's confidence in a fire department. Firefighters can perform their duties well only if they merit the trust and confidence of the community they serve. Public trust and confidence are essential to the department's effective and satisfactory operation. The

11

Chief of a fire department has the responsibility of sedulously maintaining the departmental morale and discipline. The promotion of safety of persons and property is at the core of the mission of a fire department. That cannot be achieved without intra- and inter-departmental morale.

[Id. at 562.]

With these principles in mind, we analyze whether the Board's final administrative determination was supported by substantial evidence in the record, or was arbitrary, capricious, or unreasonable.

Downar was charged with conduct unbecoming a public employee, contrary to N.J.A.C. 4A:2-2.3(a)(6). "The determination of what constitutes conduct unbecoming a public employee is primarily a question of law." Karins, 152 N.J. at 553 (citing Jones v. City of Pittsburgh, 476 A.2d 895, 898 (Pa. 1984)). The phrase "conduct unbecoming a public employee" is an elastic one; it does not require the "'violation of any particular rule or regulation, but may be based merely upon the violation of the implicit standard of good behavior which devolves upon one who stands in the public eye as an upholder of that which is morally and legally correct.'" Karins, 152 N.J. at 555 (quoting Hartmann v. Police Dep't of Vill. of Ridgewood, 258 N.J. Super. 32, 40 (App. Div. 1992)). Downar was convicted of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7), by causing "significant bodily injury" to the victim.

12

By any measure, an aggravated assault causing significant bodily injury—a fractured facial bone, concussion, and facial laceration—is conduct unbecoming a public employee. See Hartmann, 258 N.J. Super. at 39-40 (finding that inebriated off-duty police officers who engaged in a fistfight and wrestling engaged in conduct unbecoming an officer). Moreover, Downar "exhibited this behavior in public . . . and without regard to who may have witnessed the incident." Karins, 152 N.J. at 556.

Downar was properly charged with inability to perform duties, N.J.A.C. 4A:2-2.3(a)(3), due to his incarceration. He was sentenced to a 365-day jail term as a condition of probation and was paroled after serving 120 days. Downar was clearly unable perform his duties as a firefighter during the four months he was incarcerated. Downar's absence from duty was not approved by his superior. He was not granted a leave of absence to serve his jail term. His inability to perform duties during his incarceration warranted removal.

Downar was further charged with conviction of a crime, N.J.A.C. 4A:2-2.3(a)(5). Downar pled guilty to aggravated assault, a serious, violent crime. This provided an additional basis for disciplinary action.

Downar was additionally charged with "other sufficient cause," N.J.A.C. 4A:2-2.3(a)(12), for violating Department Rules and Regulations. His failure

13

to report the incident and the resulting arrest, indictment, conviction, and sentence violated the policy adopted by the Department on January 4, 2017, and in turn, violated Article 1, Paragraph 4 and Article 59, Paragraph 1.

Downar was charged with failure to report his arrest, indictment, conviction, and sentence to management. The Department did not have a written policy, rule, or regulation requiring notification in place when the assault occurred. However, on January 4, 2017, the very day that Downar was arrested, the Department promulgated a written policy that became effective immediately, which required firefighters to report "contact with any police agency as a victim, witness, or suspect (criminal or traffic complaints) . . . via an administrative submission . . . to their immediate supervisor upon their first day reporting back to duty." Downar does not dispute that the policy was the subject of roll call training and was conspicuously posted, and yet claims he was unaware he had to report the incident to his superiors. The ALJ found that testimony incredible.

The assault occurred on July 30, 2016. Downar was indicted on June 13, 2017, pled guilty to third-degree aggravated assault on October 2, 2017, and was sentenced on December 8, 2017. Thus, Downar kept the incident and its aftermath a secret for months after the policy requiring disclosure of criminal

incidents was adopted. He first reported his criminal charge to management on the day he began serving his jail term, by having a union representative advise that he would not be reporting to work the following day because he was serving a jail term.

Downar claims that in practice, firefighters did not report incidents involving the police or pending charges to management. His witnesses testified to that practice. The Administrative Law Judge (ALJ), who observed and heard the testimony, found those witnesses unpersuasive. We accord deference to the credibility determinations of the factfinder and decline to substitute our judgment for that of the ALJ. In any event, the alleged prior practice of not reporting contact with police or pending criminal charges is irrelevant given the policy adopted by the Department on January 4, 2017, that requires firefighters to notify their immediate superior in writing of criminal complaints or contact with police as a suspect. The questionable practice that Downar continues to rely upon, in other words, was soundly rejected by the remedial policy.

Downar had no prior disciplinary history and received good performance reviews. He argues that removal was disproportionate to the offense, his first

15

disciplinary infraction, and that the failure to apply progressive discipline was reversible error.  We disagree.

Our Supreme Court first recognized the concept of progressive discipline in West New York v. Bock, 38 N.J. 500, 522 (1962).  Under progressive discipline, "past misconduct can be a factor in the determination of the appropriate penalty for present misconduct."  Herrmann, 192 N.J. at 29 (citing Bock, 38 N.J. at 522).  An employee's recent promotions and commendations are also relevant in a disciplinary hearing.  Bock, 38 N.J. at 523-24.  Thus, progressive discipline can be used to mitigate the penalty imposed for an infraction by "an employee who has a substantial record of employment that is largely or totally unblemished by significant disciplinary infractions."  Herrmann, 192 N.J. at 33.  However, progressive discipline may be bypassed where the conduct is sufficiently egregious.  Stallworth, 208 N.J. at 190-91.  "In particular, 'progressive discipline is not a necessary consideration when reviewing an agency head's choice of penalty when the misconduct is severe, when it is unbecoming to the employee's position[,] or renders the employee unsuitable for continuation in the position.'"  In re Restrepo, 449 N.J. Super. 409, 425 (App. Div. 2017) (quoting Herrmann, 192 N.J. at 33).  "Instead, . . . some disciplinary infractions are so serious that removal is appropriate

16

notwithstanding a largely unblemished prior record." In re Carter, 191 N.J. 474, 484 (2007).

"Courts 'accord substantial deference to an agency head's choice of remedy or sanction.'" Id. at 424 (quoting Herrmann, 192 N.J. at 34-35). "A reviewing court should alter a sanction imposed by an administrative agency only 'when necessary to bring the agency's action into conformity with its delegated authority. The Court has no power to act independently as an administrative tribunal or to substitute its judgment for that of the agency.'" Herrmann, 192 N.J. at 28 (quoting In re Polk, 90 N.J. 550, 578 (1982)); accord Carter, 191 N.J. at 486 (cautioning that "courts should take care not to substitute their own views of whether a particular penalty is correct for those of the body charged with making that decision"). Ultimately, the issue is whether the sanction imposed is "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness." Restrepo, 449 N.J. Super. at 426 (quoting Carter, 191 N.J. at 484).

Even though committed while off-duty, the aggravated assault, coupled with the failure to report the incident, subsequent criminal prosecution, conviction, and sentence, and his resulting inability to perform duties during

17

his jail term, constituted egregious misconduct. [1] Here, the Commission's decision was supported by substantial credible evidence and was not arbitrary, capricious, or unreasonable despite the absence of prior disciplinary infractions. Removal does not shock our sense of fairness. Accordingly, we discern no basis to overturn the Commission's decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[1] Notably, forfeiture of public employment is required when an employee is convicted of a crime of the third-degree or above. N.J.S.A. 2C:51-2(a)(1). The successful joint application to reduce the conviction to fourth-degree aggravated assault circumvented the statutory forfeiture of employment but did not reduce Downar's sentence. Notwithstanding the downgrade, Aviles suffered considerable traumatic injuries that required medical treatment.

A-3623-19